PEOPLE v PAINTMAN

Docket No. 69756. Submitted May 3, 1984, at Lansing.—Decided
     November 19, 1984. Leave to appeal applied for.

     Norman A. Paintman was convicted of first-degree murder, Oak-
     land Circuit Court, Robert C. Anderson, J. Defendant's previous
     conviction on the same charges had been reversed by the
     Supreme Court on the basis that defendant's inculpatory state-
     ment to the police had been obtained without a knowing and
     intelligent waiver of counsel. The Supreme Court ordered a
     new trial at which the statement was not to be admitted. 412
     Mich 518 (1982). At the second trial the court conducted a
     separate hearing on the voluntariness of the defendant's state-
     ment and concluded that, while the statement could not be
     used in the prosecutor's case-in-chief, it could be used to
     impeach the defendant if he chose to take the stand. Conse-
     quently, the defendant did not take the stand and the state-
     ment was never introduced at the trial. Defendant appealed.
     *Held:*

          1. The questions of the voluntariness of the defendant's
     statement and that of the knowing, voluntary and intelligent
     waiver of counsel are different inquiries. The Supreme Court,
     in reversing defendant's first conviction, never reached the
     question of the voluntariness of the statement. Therefore, the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21A Am Jur 2d, Criminal Law §§ 989, 990.
[2-5] 29 Am Jur 2d, Evidence §§ 529, 612.
     Admissibility of pretrial confession in criminal case—Supreme
     Court cases. 4 L Ed 2d 1833, 12 L Ed 2d 1340.
     Constitutional aspects of procedure for determining voluntariness of
     pretrial confession. 1 ALR3d 1251.
[3] 81 Am Jur 2d, Witnesses §§ 527, 602.
     Impeachment of accused as witness by use of involuntary or not
     properly qualified confession. 89 ALR2d 478.
[4] 5 Am Jur 2d, Appeal and Error § 880.
[4, 6] 5 Am Jur 2d, Appeal and Error § 772.
[5] 29 Am Jur 2d, Evidence §§ 543 *et seq.,* 566 *et seq.*
[6] 21A Am Jur 2d, Criminal Law § 957 *et seq.*
     81 Am Jur 2d, Witnesses § 507.
[7] 5 Am Jur 2d, Appeal and Error § 783.

previous ruling of the Court of Appeals, finding that the statement was voluntary, is the law of the case. Furthermore, the trial court at the second trial made a new determination of voluntariness.

2. A statement obtained in violation of a defendant's right to counsel, if it is otherwise voluntary, may be admitted for impeachment purposes alone. The trial court's finding of voluntariness was not erroneous. Therefore, the trial court did not err in allowing the statement to be used for impeachment.

3. The trial court did not deny defendant his right of confrontation by restricting the cross-examination of a prosecution witness. The defendant was allowed to introduce evidence of the witness's past convictions; it was not improper for the court to refuse to let defendant's counsel go into specific details of one of those convictions. Also, questioning of the witness regarding behavior of prisoners was properly limited as it did not go to the witness's credibility, bias or motive for testifying.

4. Testimony of the arresting officer regarding the presence of narcotics paraphernalia at the place of defendant's arrest was harmless in the circumstances of this case.

5. Defendant's sentence must be corrected as he is entitled to more days credit than calculated by the trial court at sentencing.

Affirmed, and remanded for correction of sentence.

1. CRIMINAL LAW — WAIVER OF COUNSEL.

A criminal defendant's waiver of counsel must not only be voluntary, but must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege.

2. CRIMINAL LAW — VOLUNTARINESS OF STATEMENT — WAIVER OF COUNSEL.

The question of the voluntariness of an admission on the one hand and that of a knowing, voluntary and intelligent waiver of the right to counsel on the other are separate inquiries.

3. CRIMINAL LAW — IMPEACHMENT — RIGHT TO COUNSEL.

A defendant's statement taken in violation of his right to counsel, if otherwise voluntary, may be used for impeachment purposes even though it cannot be used in the prosecutor's case-in-chief.

4. CRIMINAL LAW — APPEAL — VOLUNTARINESS OF STATEMENT.

The Court of Appeals will not reverse a trial court's determination of the voluntariness of a criminal defendant's statement unless, after examining all the evidence and making an independent determination, it is left with a definite and firm conviction that a mistake was made.

5. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS OF STATEMENT.

A confession is involuntary where it is obtained by any sort of threat or violence, by any promises, express or implied, or by the exertion of any improper influence.

6. CRIMINAL LAW — TRIAL — CROSS-EXAMINATION.

The extent of and control over cross-examination lie within the sound discretion of the trial court, and its decision in that regard will not constitute error requiring reversal absent a clear abuse of discretion; that discretion, however, must be exercised with due regard for a defendant's constitutional right to confront adverse witnesses.

7. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

Two inquiries are pertinent in establishing whether an error is harmless: first, whether the error is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless, and, second, if not so basic, whether the error was harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*), for defendant on appeal.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

SHEPHERD, P.J. Defendant was convicted by a jury of four counts of first-degree murder, MCL 750.316; MSA 28.548. He was sentenced on December 22, 1982, to the mandatory four terms of life imprisonment and now appeals as of right.

Defendant was first convicted of the four murders in 1977. Those convictions were affirmed by this Court, *People v Paintman,* 92 Mich App 412; 285 NW2d 206 (1979), but were reversed by the

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Supreme Court, *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), *cert den, Michigan v Paintman,* 456 US 995 (1982). The Supreme Court found that defendant's inculpatory statement to police, admitted for substantive purposes at trial, had been obtained without a knowing and intelligent waiver by defendant of his right to counsel. A new trial was ordered, at which the statement was not to be admitted. *Id.,* p 522.

At his second trial, after the prosecutor had rested and the jury had been excused, defense counsel moved to suppress defendant's statement to the police if defendant took the stand. Because the prosecutor had brought in witnesses who testified that defendant had made damaging admissions, defense counsel felt that defendant should answer the allegations personally. Defense counsel argued that the 1976 statement could not be used for impeachment because it was involuntary and taken in violation of defendant's right to counsel. The prosecutor responded that, according to the Supreme Court's decision in the case, the statement could not be used in the case-in-chief, but she was not precluded from using it in rebuttal. The prosecutor felt that it was not necessary to hold a new *Walker [People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965)] hearing on the issue, but "the more prudent course would be to have a short hearing to determine whether or not those statements were voluntarily made". Defense counsel argued that a *Walker* hearing had already been held in conjunction with the first trial, that defendant's statement had been found involuntary, and that those hearing results constituted the law of the case. He further argued that the trial court had no right to hold a new hearing and that he was not prepared for one. After a recess, a hearing on voluntariness was conducted.

Outside the presence of the jury, two Southfield police officers testified that they visited defendant in jail on the afternoon of March 1, 1976. Three days earlier, defendant had terminated police questioning, stating that he wanted an attorney. Later that same day, after defendant had signed a form requesting appointed counsel at his arraignment, Captain Ritenour, one of the officers testifying at the *Walker* hearing, visited defendant in his cell at the Southfield police station to inquire about his condition. Ritenour told defendant, who was experiencing some symptoms of withdrawal from narcotics, to bring his condition to the attention of personnel at the county jail after he had been transported there. Ritenour also told defendant he "would like to talk about the incident, but knew that it was getting late and understood that defendant did not feel well". Ritenour told defendant that he would try to get to the jail within the next few days and if defendant "felt like discussing the matter, we could do it at that time". According to Ritenour, defendant thanked him for his concern, told him that he did not feel like talking to anyone at that time because of his condition, but that he might "decide later to talk" with Ritenour and "possibly [Ritenour] should stop at the county jail". On the morning of March 1, 1976, Ritenour called the jail and asked a "turnkey" to ask defendant "if he cared to discuss anything" with Ritenour. The answer relayed to Ritenour by the guard was in the negative. Ritenour, however, "didn't trust the circumstances", reasoning that defendant would not tell the guard that he wanted to talk to police even if he did want to talk. Ritenour, therfore, decided to check with defendant directly, and visited the county jail with Detective Simmons. Once at the jail, Ritenour and Simmons told a guard to tell defendant that they were there and

wanted to talk to him and, "if he cared to talk" to come to the interview room. Defendant did so. Upon their inquiry, defendant informed Ritenour and Simmons that he felt much better physically.

According to the two officers, after an initial exchange of greetings, defendant immediately began making a statement about the incident. Ritenour had to stop him several times in order to advise him of his rights. Defendant stated that he understood his rights and wanted to get on with the story. Ritenour was finally able to recite the rights in full and to obtain a waiver from defendant after asking defendant to pay him the "professional courtesy" of allowing Ritenour to do so. Ritenour asked defendant if he wanted to speak to a lawyer, and defendant replied that he was going to get his own lawyer. He then proceeded to give a statement about his involvement in the murders. The entire meeting took about one-half hour.

At the second *Walker* hearing, defense counsel did not cross-examine either Ritenour or Simmons, stating "this matter is the law of the case and I'm not prepared". Nor did defendant, or any defense witnesses, testify at the hearing. The trial judge ruled that defendant's statement was voluntarily made and could be used to impeach his testimony. Defense counsel stated that, in light of the court's ruling, defendant would not take the stand. The statement was therefore never introduced at trial.

On appeal, defendant first argues that the trial court erred by ruling that his statement could be used for impeachment purposes if defendant testified. Defendant interprets the Supreme Court's ruling in *People v Paintman, supra,* as precluding any use of defendant's statement in his subsequent trial. We do not read the Supreme Court's opinion so broadly, however.

Prior to defendant's first trial, a *Walker* hearing

was held to determine the admissibility of defendant's statement. The trial court ruled that the statement was involuntary, and issued an order of suppression. An immediate interlocutory appeal was taken by the prosecutor to this Court, which then reversed the trial court, finding defendant's statement to have been voluntarily given. Upon completion of his first trial, where the statement was admitted as substantive evidence, defendant appealed as of right to this Court, which affirmed his conviction, *People v Paintman, supra,* and specifically refused to reconsider the admissibility of defendant's statement, holding that its decision in the previous interlocutory appeal was the law of the case.

Defendant's conviction was then reversed by the Michigan Supreme Court which held that defendant had not made a knowing and intelligent waiver of his right to counsel. *People v Paintman,* 412 Mich 526, 528. The Supreme Court remanded for a new trial "at which the statements may not be admitted". *Id.,* p 522. In reversing defendant's conviction, the Court relied exclusively on *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981).

In *Edwards,* the United States Supreme Court held that a defendant's waiver of counsel must not only be voluntary, but must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. *Edwards, supra,* p 482. The question of the voluntariness of an admission itself on the one hand and a knowing, voluntary and intelligent waiver of the right to counsel on the other, are discrete inquiries. *Id.,* p 484.

In the instant case, the Michigan Supreme Court reversed defendant's conviction and suppressed his confession based on the rule governing waiver of counsel as set forth in *Edwards,* and did not reach

or consider the separate question of whether defendant's confession itself was voluntary. Therefore, the previous decision of this Court finding that defendant's confession was voluntary continues to govern as the law of the case. *People v Paintman,* 92 Mich App at 416; *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975), *lv den* 395 Mich 793 (1975). Further, a second *Walker* hearing on voluntariness alone was conducted at defendant's second trial, and his statement was found to have been voluntary. Defense counsel did not participate in the hearing because, he alleged, he was unprepared. Nothing in the record indicates, however, that defendant could not have sought or obtained a brief recess in order to better prepare. Furthermore, defense counsel was clearly aware of the issue to be resolved at the *Walker* hearing and of the background of the case, including the facts available to him which might be brought out at the new *Walker* hearing. We therefore find that counsel was prepared.

Defendant now asserts that his statement obtained in violation of *Edwards* could not be used for impeachment purposes. This issue has been decided contrary to defendant's position for United States constitutional purposes by the United States Supreme Court in *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971). A voluntarily given confession obtained in violation of a defendant's in-custody rights may be used for impeachment without being in violation of United States constitutional provisions. *Harris, supra,* p 226. The United States Supreme Court outlined the basis for its decision:

"*Miranda [v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] barred the prosecution from making

its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case-in-chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

\* \* \*

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris, supra,* pp 224, 226.

In a split decision, the Michigan Supreme Court in *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982), Justice COLEMAN writing, held:

"*Harris* is determinitive of the instant question. *Edwards* was a ruling on the nature of the *Miranda* rights, particularly addressing the question of how the right to counsel is waived once it is invoked. *Harris* specifically addresses the question involved here, which is whether any use can be made of a voluntary statement obtained in violation of *Miranda.* Regarding this question *Edwards* is silent. Therefore, we conclude that no error was committed by the use of defendant's prior voluntary statement for impeachment purposes." 417 Mich 54.

We note, however, that, while five Justices agreed that this was a correct result under United States constitutional law, the vote was divided three to three as to whether the *Harris* analysis was applicable to the Michigan Constitution. As the issue has not been definitively decided by the Michigan Supreme Court, we are without binding precedent and must independently address and resolve this question.

Panels of this Court considering this matter are not uniform in their decisions, but have generally held that statements taken in violation of a defen-

dant's right to counsel, if voluntary, may be used for impeachment purposes although they could not have been used in the prosecutor's case-in-chief. *People v Clark,* 127 Mich App 176; 339 NW2d 14 (1983); *People v Gonyea,* 126 Mich App 177; 337 NW2d 325 (1983), *lv gtd* 418 Mich 956 (1984); *People v Hobbs,* 124 Mich App 785; 335 NW2d 693 (1983). But see, *People v Strieter,* 119 Mich App 332; 326 NW2d 502 (1982), *lv gtd* 418 Mich 946 (1984), although the facts in *Strieter* indicate that the defendant's statement was in that case actually rendered involuntary as a result of the deprival of the defendant of her right to counsel. It should also be noted that Judge KELLY dissented from the majority opinion in *Strieter.*

We agree with those panels and the three Supreme Court Justices who hold that statements obtained in violation of a defendant's right to counsel may, if otherwise voluntary, be admitted for impeachment purposes alone. As did Justice COLEMAN in *Esters,* we find the rationale supporting admission offered by the *Harris* Court to be persuasive and agree that defendants should not be granted a "license to use perjury" by perverting the shield offered by *Miranda.* In reaching this holding, we have decided not to push our interpretaion of the Michigan Constitution beyond the level prescribed by the United States Constitution on this issue.

We find that the trial court properly allowed the use of defendant's statement for impeachment purposes although it could not have been used in the prosecutor's case-in-chief. Upon completion of two *Walker* hearings, two courts had determined that defendant's statement itself was voluntary. This Court will not reverse a trial court's decision as to voluntariness unless, after examining all the evidence, we are left with a definite and firm

conviction that a mistake has been made. *People v Dean,* 110 Mich App 751, 754; 313 NW2d 100 (1981). A confession is involuntary if obtained by any sort of threat or violence, by any promises, express or implied, or by the exertion of any improper influence. *Malloy v Hogan,* 378 US 1, 7; 84 S Ct 1489; 12 L Ed 2d 653 (1964).

As we noted earlier, since the Supreme Court in reversing defendant's earlier conviction did not actually reach the issue of voluntariness, this Court's earlier interlocutory order constitutes the law of this case. However, we further find, after reviewing the record of the second *Walker* hearing, that the second determination of voluntariness was also supported by the evidence.

According to Ritenour, defendant indicated that he might later wish to talk to him after he was feeling better. Subsequently, three days later, Ritenour visited defendant in jail. Although Ritenour had been advised that defendant did not wish to speak to him, he was not so advised by defendant himself and was later voluntarily visited by defendant at the jail. Ritenour and Simmons both testified that defendant insisted that they take his statement and, in fact, was so insistent upon making his statement that they had to stop him in order to advise him of his rights. On these facts, we find defendant's statement to be voluntary. We would also note that this case is thus clearly distinguished from *Strieter, supra,* where the defendant was under the impression that any statement she made could not be used against her. We conclude that the trial court did not err in allowing the prosecutor to use defendant's statement in impeachment (although, as noted previously, defendant did not testify and the statement was therefore never imparted to the jury).

Defendant also argues that this Court previously

applied the wrong standard in reviewing the original trial court's suppression order which was the subject of defendant's previous interlocutory appeal. Specifically, defendant argues that, rather than the clearly erroneous standard, this Court is required to use an abuse of discretion standard, giving great deference to the trial court's findings of fact. There is, however, no merit to this contention. This Court is required to make an independent determination of the ultimate issue of voluntariness. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974). If, after an independent review, this Court does not possess a definite and firm conviction that a mistake was committed by the trial court in its suppression ruling, then it must affirm. *Id.,* p 257. As this Court applied the correct standard in independently assessing the previous trial court ruling, we find no error in its prior conclusion and reversal of the suppression order.

Defendant next argues that the trial court erred in restricting his cross-examination of a prosecution witness, thereby denying defendant his right of confrontation. We disagree.

The extent of and control over cross-examination lie within the sound discretion of the trial court, and its decision in that regard will not constitute reversible error absent a clear abuse of discretion. *People v Allen,* 109 Mich App 147, 160; 311 NW2d 734 (1981), *lv den* 412 Mich 913 (1982). The trial court's discretion, however, must be exercised with due regard for a defendant's constitutional right to confront adverse witnesses. *People v Bell,* 88 Mich App 345, 348; 276 NW2d 605 (1979). We are convinced that the trial court did not impermissibly restrict defendant's constitutional right of confrontation.

The court first prevented defense counsel from

going into exhaustive detail regarding the witness's past convictions. Descriptions of all of the convictions and their dates were allowed to be place on the record; the trial court merely prevented defense counsel from exhaustively questioning the witness as to the location of the convictions. We do not interpret the United States Supreme Court's decision in *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), as allowing unlimited cross-examination as to prior convictions. Rather, the Court there held that introduction of evidence of a prior crime could form part of a general attack on credibility. In the instant case, the trial court's refusal to allow defense counsel to go into the specific details of one of the witness's prior convictions was permissible. Within the confines of *Davis* and the trial court's ruling, defendant was adequately permitted to impeach the credibility of the witness.

Defense counsel was also limited in his exploration of prisoner ethics with the prosecution witness. Counsel asked the witness if a person would have trouble in prison if he had done something to a young child. The witness replied, "not necessarily". Defense counsel's attempt to further explore this area was cut off by the trial court. We do not find the trial court to have abused its discretion. Defense counsel clearly wanted to show that prisoners who hurt children were abused in prison, and therefore defendant would never have admitted to the witness, contrary to the witness's testimony, that he shot a child, one of the victims in the instant case. While testimony regarding what a normal prisoner would or would not admit might have been relevant, it did not go to the witness's credibility, bias, or motive for testifying. Furthermore, the witness denied that the prisoner norm was a hard and fast rule, and refused to corrobo-

rate counsel's theory. Any further questioning by defense counsel would not have constituted permissible impeachment, therefore, but would have constituted mere argument with the witness.

Next, defendant argues that the trial court impermissibly allowed the admission of evidence indicating that police found narcotics paraphernalia nearby when they arrested defendant.

The arresting officer testified that, when he arrested defendant, he observed syringes in defendant's bedroom. On cross-examination, the officer testified that he also noticed clothes belonging to a female in the bedroom. While we agree that it would have been preferrable to exclude the testimony regarding syringes, we do not find its admission to be reversible error in the instant case.

To establish whether an error is harmless, two inquiries are pertinent. First, whether the error is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless. Second, if not so basic, whether the error was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). Apparently, only in non-drug-related theft cases is the admission of narcotics evidence prejudicial to such a degree that reversal is necessarily mandated. *People v Mullins,* 79 Mich App 515, 516; 261 NW2d 67 (1977). We must therefore determine whether the admission of the testimony in the instant case was harmless error beyond a reasonable doubt. In general, the entire trial was replete with references to heroin and heroin addiction. All of the victims, with the exception of the child, were addicts and dealers and had taken heroin shortly before their deaths, as evidenced by blood-test results. Defendant and his accomplice were both heroin addicts, although defendant's addiction did not come out at trial. The prose-

cutor's main witness was an admitted addict and heroin dealer who had been on his way to purchase heroin from one of the victims. Defendant's witness was an admitted drug dealer and user serving time in prison. That witness also testified on behalf of defendant that defendant had been swindled in a drug deal by a prosecution witness and that defendant had taken back money he had given the witness to purchase drugs. The wife of one of the victims testified that drugs had been taken from the apartment where the killings took place.

Given the quantity of narcotics evidence introduced at trial, some of it by defendant, and the very permeation of this trial with references to narcotics, it is highly unlikely that the arresting officer's single statement that he saw a syringe in the bedroom occupied by defendant and another was prejudicial to defendant. Defense counsel was able to demonstrate that defendant was not in actual possession of the syringe or any narcotics paraphernalia when he was arrested and there was no evidence introduced at trial that defendant was a heroin addict. We therefore conclude that any error in allowing the statement was harmless beyond a reasonable doubt.

Finally, defendant argues that he is entitled to 414 additional days credit on his sentence for time served in jail prior to sentencing. We agree. The trial court sentenced defendant to four mandatory terms of life imprisonment. The judgment of sentence stated that defendant's sentence was to begin on the date of sentencing and that he was to receive 2,076 days of credit for time already served. This calculation was erroneous. Defendant was actually entitled to 2,490 days, or 414 more days than he received. We calculate this credit in the following manner: defendant was arrested on

February 27, 1976, and was not released on bond. There were six years from the date of arrest until February 27, 1982, or 2,192 days (1976 and 1980 were leap years). There were 298 days from February 27, 1982, until sentencing on December 22, 1982. Adding those 298 days to the 2,192 already computed yields a total of 2,490.

Although defendant is serving mandatory sentences of life imprisonment without parole, the failure to give him the extra credit is not harmless error. The number of days he has already served may affect his eligibility within the prison system for various benefits and may affect his eligibility for a commutation of his sentence by the Governor, however unlikely that possibility may be. We therefore remand to the circuit court in order that the circuit court may file a corrected judgment of sentence in conformity with this opinion.

Affirmed; remanded for correction of sentence.