PEOPLE v STACY

Docket No. 118513. Submitted July 15, 1991, at Lansing. Decided
    February 3, 1992, at 9:40 A.M. Leave to appeal sought.

    Michael D. Stacy was convicted by a jury in the Saginaw Circuit
    Court, Leopold P. Borrello, J., of one count of arson of a
    dwelling and five counts of first-degree murder. He appealed.

        The Court of Appeals *held:*

        1. The trial court did not err in allowing the prosecutor to
    impeach the defendant with evidence of a statement the defen-
    dant made to the police after he had requested counsel. A
    statement taken in violation of the right to counsel, if other-
    wise voluntary, may be used for impeachment purposes even
    though it cannot be used in the prosecutor's case in chief.
    Because any suppression motion by trial counsel with respect
    to the statement would have been unwarranted, the defendant
    may not claim ineffective assistance of counsel on the basis of
    trial counsel's failure to seek exclusion of the statement.

        2. Reversal of the defendant's convictions or remand for an
    evidentiary hearing is not necessitated by allegations on appeal
    that the defendant's girl friend, a key witness for the prosecu-
    tion, had been intimidated to testify falsely at trial with threats
    of criminal prosecution and incarceration. Although prosecuto-
    rial intimidation of defense or prosecution witnesses has been
    strongly condemned by the Supreme Court and the Court of
    Appeals in prior cases, no manifest injustice results from
    refusal to reverse the defendant's convictions or to remand the
    case for an evidentiary hearing concerning the alleged intimi-
    dation because trial counsel failed to request the trial court to
    address the issue and evidence of the purported threats to the
    witness was presented to the jury during the course of trial
    counsel's cross-examination of the witness.

        3. The trial court did not err in sustaining an objection to
    trial counsel's questioning of the defendant concerning his girl
    friend's possible bias, interest, or motives for testifying against

References
Am Jur 2d, Evidence § 937; Witnesses §§ 527, 560.
Impeachment of accused as witness by use of involuntary or not
    properly qualified confession. 89 ALR2d 478.

him. Because no offer of proof was made with regard to this line of questioning, the issue was not properly preserved for appeal. Also, the girl friend's bias, interest, and motivation were explored in detail during cross-examination.

4. The trial court did not err in admitting a police report concerning the location of another suspect at the time of the offenses or in failing to caution the jury to disregard the testimony of the police officer in charge of the investigation that he was satisfied with that suspect's alibi. A police report of routine matters made in a nonadversarial setting, as opposed to matters observed by police officers at the scene of a crime or while investigating a crime, is admissible under MRE 803(8)(B) as a hearsay exception for public records and reports. The disputed police report was made in connection with events unrelated to the defendant and the offenses at issue and therefore were prepared in a nonadversarial setting. Regarding the officer's testimony, to which the defendant's objection had been sustained at trial, no error requiring reversal resulted in light of trial counsel's failure to request a cautionary instruction and the admissibility of the police report.

5. The prosecutor's remarks during closing argument that only the defendant knew who set the fire, that the defendant was the one who set the fire, and that the testimony of the defendant's girl friend was truthful were not improper. The prosecutor argued for conviction not on the basis of the prestige of his office, his opinion, or the opinion of the police, but on the basis of the evidence presented.

Affirmed.

FITZGERALD, J., dissenting in part, stated that the case should be remanded for an evidentiary hearing regarding the alleged intimidation of the defendant's girl friend.

1. CRIMINAL LAW — IMPEACHMENT — RIGHT TO COUNSEL.

A defendant's statement taken in violation of the right to counsel, if otherwise voluntary, may be used for impeachment purposes even though it cannot be used in a prosecutor's case in chief.

2. CRIMINAL LAW — WITNESSES — INTIMIDATION BY PROSECUTOR.

Neither a reversal of a conviction nor a remand for an evidentiary hearing is required where a defendant first alleges on appeal that a witness for the prosecution had been intimidated to testify falsely, where trial counsel failed to request the trial court to address the issue, and where evidence of the purported threats to the witness was presented to the jury.

3. EVIDENCE — HEARSAY — POLICE REPORTS.

> A police report of routine matters made in a nonadversarial setting, as opposed to matters observed by police officers at the scene of a crime or while investigating a crime, is admissible under the hearsay exception for public records and reports (MRE 803[8][B]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Michael D. Thomas,* Prosecuting Attorney, and *Laura A. Chappelle,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*), for the defendant on appeal.

Before: SHEPHERD, P.J., and CAVANAGH and FITZGERALD, JJ.

SHEPHERD, P.J. After a jury trial, defendant was convicted of arson of a dwelling, MCL 750.72; MSA 28.267, and five counts of first-degree murder, MCL 750.316; MSA 28.548. The convictions arose out of the firebombing of the home of the Brandon family in Saginaw, Michigan, during the early morning hours of September 3, 1987, which resulted in the death of five occupants. Defendant was sentenced to thirteen to twenty years' imprisonment for the arson and to life imprisonment for the five counts of murder. Defendant now appeals as of right. We affirm.

The evidence of defendant's guilt was largely circumstantial except for the testimony of his girl friend, Iza Mae Nash. There was evidence that defendant had been in altercations with Greg Davis. One of these altercations took place on the night of September 2, 1987, and involved others who were friends of Davis. There was testimony that Davis had lived in the Brandon family home until shortly before the firebombing. In fact, that

night, after the altercation, Davis was sitting on the porch of the Brandon home. The prosecution theorized that defendant thought that Davis was still living there at that time.

Iza Nash testified that she saw defendant at about 10:30 P.M. on September 2, 1987, at which time he told her that he had been in a fight. Defendant left Nash and went out again shortly after 11:00 P.M. Defendant's friend, Johnnie Batton, testified that, shortly after midnight in the morning of September 3, 1987, defendant attempted to get Batton to help him "f_____ up" the "dudes" that had "messed with" him earlier that night. Batton refused.

A neighbor, Ruben Garcia, first saw the fire between 1:45 and 1:50 A.M. and reported it shortly before 2:00 A.M. Garcia saw a thin black male crouched down near a railroad power box by the tracks that ran behind his home and next to the Brandon home. The man got up and approached the Brandon home with something in his hands that lit up with fire. Garcia heard breaking glass and saw the fire spread rapidly. The man then walked away, passing the railroad power box and walking along the tracks behind Garcia's home. Garcia told his wife to call the fire department.

Officer Thomas McGarrity testified that he was dispatched to a breaking and entering in progress a block east of Howard Street during the early morning hours of September 3, 1987. The subject ran from that location and Officer McGarrity gave chase, catching him across the street from the Brandon house at 1:39 A.M. As he was handcuffing the subject, McGarrity saw a black male dressed in dark clothing and fitting defendant's general description walk quickly from the area of the Brandon house, cross the street diagonally behind him, and disappear before he finished handcuffing his

prisoner. By 1:45 A.M., another officer had arrived to escort the prisoner and McGarrity back to his car; there were no signs of fire at the Brandon house at that time.

An arson investigator of the Michigan State Police was qualified as an expert and testified that the fire was deliberately ignited with an accelerant —gasoline. A knife was found at the scene, in the front yard near the railroad power box and white picket fence. The knife was identified as the one defendant carried when he spoke with Officer Charles Braddock and Timothy Lee and Phillip Lee at approximately 10:00 P.M. on the evening of September 2, 1987. And, as indicated, defendant's girl friend, Iza Nash, testified with regard to conversations she had with defendant after he came back to her house at about 2:00 A.M. He had been staying with Nash that summer. Her home was approximately 3½ blocks from the Brandon home. The details of the conversations are discussed *infra.*

I

Defendant first argues that error requiring reversal occurred when the trial court permitted the prosecutor to impeach, or attempt to impeach, defendant with a statement made by him to the police after he had requested counsel. Defendant also advances what is labeled as an alternative argument, i.e., that he was denied the effective assistance of counsel because his trial counsel failed to move for the suppression of the statement. It is clear, however, that the latter argument is dependent upon the success of the first argument. Indeed the arguments are one. Trial counsel at first objected to, and later acquiesced in, the use of the report. Thus the asserted error is not preserved. Accordingly, defendant argues inef-

fective assistance. At a *Ginther*[1] hearing, the trial court concluded that the attempted impeachment was not harmful and was based on legitimate trial strategy. We affirm the trial court's conclusion that the use of the statement for impeachment was proper and that defendant was not denied the effective assistance of counsel. Therefore, any suppression motion by counsel would have been unwarranted.

Defendant argues: "[I]t is an open question whether under the Michigan Constitution the prosecution may impeach an accused with a statement taken by police after failing to honor the defendant's request for counsel pursuant to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The Michigan Supreme Court has not settled this issue."

It is true that the Michigan Supreme Court has not settled this issue. See *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982), where three justices opined that, under the Michigan Constitution, such a statement could not be used for any purpose, while three others took the view that a voluntary statement obtained in violation of *Miranda* could be used for impeachment; Justice RILEY did not participate. See also *People v Gonyea,* 421 Mich 462, 473-483; 365 NW2d 136 (1984) (also a 3-to-3 split; Justice CAVANAGH concurring on the facts of that case that the statement was inadmissible for any purpose but not indicating whether this conclusion was based on Michigan or federal constitutional law). However, this Court has held that, as a matter of Michigan constitutional law, "statements taken in violation of a defendant's right to counsel, if voluntary, may be used for impeachment purposes although they

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

could not have been used in the prosecutor's case-in-chief." *People v Paintman,* 139 Mich App 161, 169-170; 361 NW2d 755 (1984). See also *People v Clark,* 127 Mich App 176; 339 NW2d 14 (1983). We are not persuaded to diverge from this path. Defendant does not contend that his statement was involuntary. Accordingly, we find no error in the use of the statement and conclude that defendant was not denied the effective assistance of counsel.

II

Defendant next argues that he was denied a fair trial because the police intimidated a key prosecution witness, Iza Mae Nash, with threats of jail and criminal charges, thereby causing her to testify against defendant. Both our Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses. *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970); *People v Crabtree,* 87 Mich App 722; 276 NW2d 478 (1979). Threats from law enforcement officers may be attributed to the prosecution. See *People v Hooper,* 157 Mich App 669, 675; 403 NW2d 605 (1987). Where a testimonial record must be developed to support a defendant's argument on the issue, remand for an evidentiary hearing has been ordered. See *People v Hooper,* 422 Mich 875; 366 NW2d 6 (1985) (timely motion for remand had been filed). See also *People v Pena, supra* (while three justices voted for outright reversal, a majority could be mustered only to remand "for a determination by [the trial] court as to whether or not the prosecutor . . . did intimidate the witnesses").

In this case, defendant's girl friend, Iza Nash, was clearly the most damning witness against defendant. She was called as the prosecution's last witness and testified that, about 10:30 in the eve-

ning of September 2, 1987, she was returning to her home when she noticed defendant talking to the police on the street. Shortly thereafter, defendant came to Nash's home and told her he had been in a fight. She and defendant went next door to her sister's house to watch television. Defendant stayed "for a minute" and went out again sometime after 11:00 p.m. Nash went back to her house at approximately 1:30 or 1:45 in the morning of September 3, 1987. Thereafter, she heard sirens, and defendant then knocked at her door.

At this point in the testimony, the prosecutor asked Nash if defendant said anything when he walked through the door. Nash's answer could not at first be heard. She then testified that defendant said that "he hope[d] there [were] no kids in there." The prosecutor then asked if defendant said anything else, whereupon Nash replied, "I don't feel too good." A recess was then taken. When the court reconvened, the prosecutor resumed this line of questioning:

> *Q.* Did he say anything else to you at that time?
> *A.* Yes.
> *Q.* What did he say?
> *A.* Do I have to say it?
> *The Court:* Yes, ma'am.
> *A.* Well . . .
> *The Court:* Miss Nash, do you still have some water there? Do you want some?
> *Witness:* No.
> *The Court:* Pardon? I'm sorry, do you want some water?
> *Witness:* Unt-unt [sic].
> *The Court:* Okay.
> *A.* He said he done it.
> *Q.* He said he done it?
> *A.* Yeah.

*Q.* I'm sorry, I couldn't hear you. Did you say
yes?
*A.* Yeah.

The prosecutor then elicited two other critical
pieces of testimony from Ms. Nash: (1) that defen-
dant smelled like gasoline when he came in and (2)
that when she and defendant were watching the
noon news on television on September 3, 1987,
defendant saw a picture of one of the victims,
Steven Brandon, and said that Brandon was one of
the persons defendant had fought with.

Defense counsel impeached Nash with her first
statement to the police, in which she stated that
defendant said only that he hoped no kids were in
the fire, that she merely assumed from this re-
mark that defendant lit the fire, that she did not
notice the odor of gasoline on defendant, and that
defendant did not, while watching the news, iden-
tify one of the victims as having been in a fight
with him. During the course of this impeachment,
various remarks by the police officers to Nash
were read to the court and jury. The remarks were
to the effect that (1) if Nash did not cooperate, she
could be held in jail as a material witness until
trial, which could be a year later, and (2) she could
be prosecuted in connection with the incident.
Counsel also impeached Nash or sought to cast
doubt upon her credibility by eliciting evidence of
her jealousy concerning two other women with
whom defendant had been involved. Finally, de-
fense counsel asked Nash whether she was telling
the truth in her initial statement to the police or
in her testimony before the court, and she re-
sponded that her testimony was the truth.

On redirect examination, Nash testified that she
did not want to testify against defendant either at
trial or at the preliminary examination, that she

did not want to talk to the police, that she had asked the police if there was any way that she would not have to tell them what she knew, that she did not want defendant to know that she had been talking to the police, and, that she had written letters to defendant expressing her love for him.

Defense counsel did not raise the issue below or request the trial court to inquire of Nash whether she was intimidated into testifying falsely. As a general rule, an issue not raised before and considered by the trial court is not preserved for appellate review. See, e.g., *People v Phil Clark,* 172 Mich App 1, 4; 432 NW2d 173 (1988).

Our consideration of this question discloses that no manifest injustice would result from our failure to review this issue, reverse thereon, or remand as requested in the alternative by defendant. This is not a case where the actions of the court or prosecutor drove a defense witness from the stand. Rather, this prosecution witness testified, and the question is whether she told the truth or was pressured into lying. In this case, the jury was able to perform its traditional role of assessing credibility because defense counsel read into the record portions of the initial police interview where the threats or insinuations of jail and prosecution were made. The witness also testified that her testimony against defendant, not her initial interview with the police, was the truth.

Defendant relies most heavily on *People v Crabtree, supra,* where the trial court refused a request to inquire of the complaining witness whether she was intimidated by a threat of being prosecuted for perjury when she sought to drop the charges the day before trial. This Court, in a 2-to-1 decision, reversed and remanded for a new trial. The

majority recognized that the prosecutor was pre-
sented with a dilemma, but found that three fac-
tors conclusively tilted the balance toward rever-
sal: (1) the witness was not asked by the trial court
or counsel if she was in fact intimidated (however,
the prosecutor asked the court to so query the
witness, but the court declined); (2) the matter was
not brought to the court's attention by the prose-
cutor; and (3), after the witness testified, the prose-
cutor announced before the jury that he would not
prosecute her for perjury.

Initially, we find the *Crabtree* opinion unclear
on the second point, i.e., when a prosecutor should
be required to alert the trial court that the prose-
cutor (or the police) might have intimidated a
witness. We do not find this factor helpful in the
resolution of this case. We also find *Crabtree* dis-
tinguishable. There (and in *Pena*) the issue was
presented to the trial court. Also, the prosecutor's
announcement that he would not prosecute the
complainant for perjury could only be understood
as a statement by the prosecutor that *he* believed
her, thereby implicating his personal knowledge
and the prestige of his office. Defendant seeks to
analogize that statement to the following closing
argument of the prosecution in this case: "When
[Iza Nash] first went to the police, she wanted to
testify for Michael Stacy. Ultimately she wound up
telling the truth." We conclude that this was not
an attempt to bolster Nash's testimony, but rather
was a permissible argument that she, and not
defendant (who denied making the inculpatory
statements to her), was telling the truth. See
*People v Calloway,* 169 Mich App 810, 821; 427
NW2d 194 (1988), vacated on the grounds 432
Mich 904 (1989) (prosecutor may comment upon
own witness' credibility during closing argument,
especially when there is conflicting evidence and

the question of the defendant's guilt or innocence turns on which witness is to be believed).

Finally, the dissenter in *Crabtree* noted that the complainant in that case testified that she was telling the truth in her testimony. Were it not for the trial court's refusal to inquire into the matter, though asked to, and the egregiousness of the prosecutor's bolstering, this factor might have been given more weight by the panel.

We are aware that *Crabtree,* as well as the lead and concurring opinions in *Pena,* encourage (or perhaps, on those respective facts, require) that the witness be asked directly if there was any intimidation. But, in both of those cases the issue was presented to the trial court. Ideally, in this case, we would like to have a record of a non-threatening colloquy between the court and the witness, out of the presence of the jury, wherein the witness assured the court that she had not been intimidated. But, such a proceeding was not requested by defense counsel here. Where defense counsel read the actual or purported threats while cross-examining the witness, the witness affirmed her testimony, and counsel failed to request the court to address the issue, we find no manifest injustice in upholding the verdict and in declining to remand for an evidentiary hearing.

III

Defendant next argues that he was denied due process when the trial court sustained an objection to his answering the following question regarding Nash's testimony:

> *Q.* Did she respond, I mean, at all to you about her . . . when you talked to her, asked her why she wasn't telling the truth, or would she come in and tell the truth?

*A.* Yeah. First she told me that it was because
. . . .

The prosecutor then objected and the trial court excluded the testimony. Defendant made no offer of proof. Accordingly, this issue is not preserved for appellate review. MRE 103(a)(2). For several reasons, we find no miscarriage of justice in allowing the verdict to stand. First, defendant not only failed to preserve the issue below, but has yet to explain what his answer would have been to the above-quoted question. Second, the likely answer is suggested by defendant's answer (also interrupted by a sustained objection by the prosecutor) to a similar question immediately preceding the above-quoted exchange:

> And I asked her why she was doing what she was doing, and if she would come to court the next time she came to court would she tell the truth about why she is saying what she is saying.
> That was basically what we talked about when she came to see me, other than the fact that she didn't appreciate me having Ruby visit me, me having Irma visit me, and that if I didn't stop them from visiting me and seeing me and sending me money, because . . . .

Third, the prior inconsistent statements Nash made to the police were explored in detail in defense counsel's cross-examination of her—as were her possible bias, interest, and motives for changing her initial story to the police. Accordingly, defendant was not denied his right of confrontation. See, e.g., *People v Mumford,* 183 Mich App 149, 153; 455 NW2d 51 (1990). Finally, defendant cites no authority directly apposite. Defendant cites only cases apparently involving the total preclusion of a defense theory or the cross-exami-

nation of a witness regarding that witness' credibility. As noted, neither situation occurred in this case.

IV

During defense counsel's cross-examination of James G. (Greg) Davis, Davis testified that he had hit Roderick Rankin with a baseball bat in August of 1987 when Rankin talked to Davis' girl friend. In response to this apparent attempt to suggest that Rankin might have started the fire, the prosecutor sought to establish that Officer Rudy, the officer in charge of the case, investigated this possibility and rejected it.

Officer Rudy testified that he interviewed Rankin and verified his alibi by checking a police report by Officer Gatza and certain records of a taxi cab company. The police report was apparently admitted under MRE 803(6), but a defense objection to the testimony of Officer Rudy that he was "satisfied as to the whereabouts of Mr. Rankin," was sustained; however, no instruction to disregard the testimony was given. Although the police report was admitted, the parties have not submitted it to this Court for consideration. We note, however, that during proceedings outside the presence of the jury, Officer Rudy indicated that "it [shows] that Officer Gatza was in contact with Mr. Rankin at 1:35 A.M. at 3343 Webber [Street] . . . ."

Defendant argues on appeal that he was denied a fair trial by the admission of the police report and the testimony of Officer Rudy that he was satisfied with regard to Rankin's whereabouts at the time of the incident. Defendant asserts that the hearsay exceptions found in MRE 803(8)(B) and MRE 803(6) apply in this case.

Defendant first argues that the police report of Officer Gatza was inadmissible under MRE 803(8), which provides:

> *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel,* and subject to the limitations of MCL 257.624; MSA 9.2324. [Emphasis added.]

The literal terms of MRE 803(8)(B) would appear to exclude, in all criminal cases, reports containing matters observed by police officers. FRE 803(8)(B) has not, however, been so broadly read. McCormick, Evidence (3d ed), § 316, pp 891-892. In *Solomon v Shuell,* 435 Mich 104; 457 NW2d 669 (1990), four justices of our Supreme Court appeared to suggest that the Court might, at some future date, find "routine police reports made in a nonadversarial setting . . . admissible in criminal cases . . . ." 435 Mich 144-145, n 9 (opinion of Justice BOYLE; two other justices signed the opinion and Justice GRIFFIN concurred in this part of Justice BOYLE's opinion, 435 Mich 153). See also *United States v Hayes,* 861 F2d 1225, 1229 (CA 10, 1988) (citing cases for the proposition that "the exclusionary provision of Rule 803[8][B] was only intended to apply to observations made by law enforcement officials at the scene of a crime or while investigating a crime, and not to reports of routine matters made in nonadversarial settings"); *United States v Quezada,* 754 F2d 1190 (CA 5, 1985); McCormick, *supra,* § 316, p 892. We find this interpretation persuasive and applicable to the Michigan Rules of Evidence.

Defendant also argues that his confrontation rights "may" have been infringed. We conclude that they were not. Rule 803(8)(B)'s prohibition of the use, in criminal cases, of writings reflecting certain matters observed by law enforcement officers is premised upon the concern for a criminal defendant's confrontation rights. US Const, Am VI; Const 1963, art 1, § 20.[2] Notwithstanding this concern and the literal wording of FRE 803(8)(B), federal courts construing this rule have, as noted above, concluded that "Congress did not intend to exclude routine, essentially nonadversial observations, although incorporated in police records." McCormick, *supra,* § 316, p 892.

Defendant argues, generally, that "evidence admissible under an exception to the hearsay rule may still violate the confrontation clause." We need not analyze this argument at length. We are persuaded that the public records exception to the hearsay rule is among the "safest" of such exceptions in terms of reliability, *Ohio v Roberts,* 448 US 56, 67, n 8; 100 S Ct 2531; 65 L Ed 2d 597 (1980), and that it is therefore "firmly rooted," *id.* at 66, such that no independent inquiry into reliability is required for confrontation clause purposes when MRE 803(8) is satisfied. See *United States v DeWater,* 846 F2d 528, 530 (CA 9, 1988).

The facts in the present case present a situation where the material at issue in the police report

---

[2] Some authorities hold that where the author of the report is subject to cross-examination, a defendant's confrontation rights are protected and, therefore, the report may be admitted under the business records exception, FRE 803(6). McCormick, Evidence (3d ed), § 316, p 892. Such an analysis is not directly applicable in this case. Here, Officer Gatza testified and was excused before defense counsel's cross-examination of Greg Davis wherein the possible motive of Rankin was insinuated. There was some discussion on the record with regard to whether he was available to be recalled, but a recess then followed and the matter was not raised again. The report was then introduced.

(the whereabouts of Rankin) was gathered in a routine response to a call from the mother of a girl or woman who wanted Mr. Rankin to leave her home. This contact was made before the ignition of the fire and we must assume from the record before us that Officer Gatza prepared the report within hours thereafter. The crime defendant is said to have committed could only have been in the earliest stages of investigation at the time Gatza made his police report. There is no indication that the police and defendant were in an adversarial position at that point. And it has not been suggested, nor do we find it plausible on these facts, that the preparer of the report had a motivation to misrepresent.[3] Accordingly, we find that the report is admissible under MRE 803(8)(B) and that such admission does not impermissibly infringe defendant's confrontation rights. Because we have found MRE 803(8)(B) to be a proper basis for admission of the report, we need not address defendant's argument that it is not admissible under MRE 803(6).

In conclusion, defendant was not denied his right to a fair trial by the introduction of the police report. Regarding the comment by the officer in charge that he was satisfied with respect to Rankin's whereabouts, defendant does not challenge the relevance of this opinion testimony or address its propriety under MRE 701. In any event, we find no error requiring reversal in light of the following: the court sustained defense counsel's objection to this testimony; defense counsel failed to request an instruction striking the testimony; the admissibility of the police report con-

---

[3] See Justice ARCHER's opinion in *Solomon, supra,* p 132, stating that "trustworthiness is the cardinal justification for the admissibility of public records" and concluding that a motivation to misrepresent or other circumstances creating the absence of trustworthiness affect admissibility under MRE 803(8).

taining part of the factual basis for this opinion; the minimal part the report played in the trial; and the fact that the issue (Rankin's whereabouts at the time of the fire) was not the ultimate issue in the case (whether defendant was the person who set the fire).

V

In his final assignment of error, defendant argues that the prosecutor's remarks during closing argument denied him a fair trial. First, defendant takes issue with the prosecutor's statement that "only Michael Stacy knows" exactly how the fire was set. We do not think that this is a mode of argument that should often be used. However, viewing the prosecutor's remarks as a whole, and the particular remarks complained of in context, *People v Johnson,* 187 Mich App 621, 625; 468 NW2d 307 (1991), we do not find that defendant was denied a fair trial. The prosecutor was responding to defense counsel's argument that there were inconsistent theories with respect to how the fire was set. In rebuttal, the prosecutor argued that it was not disputed that there was a fire and that only defendant knew exactly how it was set. Perhaps the prosecutor could have argued that "only the person who committed this crime knew how the blaze was ignited," but the prosecutor had obviously argued throughout that defendant was this person. The prosecutor was arguing that defendant started the fire, not shifting the burden to defendant to explain or prove anything.

The second assertedly improper remark involves the statement by the prosecutor that "[u]ltimately [Iza Nash] told the truth." Defendant contends that this statement and the statement that "[t]he fact of the matter is Michael Stacy did it," improp-

erly appeal to the jury on the basis of the prose-
cutor's opinion or that of the police. We disagree.
Initially, we note that no objection was made to
this remark at trial. In any event, reviewing this
point as if preserved, we find no error. We have
already held that it was proper for the prosecution
to comment on Iza Nash's credibility. It was also
appropriate for the prosecutor to argue from the
evidence and inferences to be drawn therefrom
that defendant "did it." *People v Johnson, supra.*
This case is distinguishable from *People v Boske,*
221 Mich 129, 133-134; 190 NW 656 (1922), where
the prosecutor argued that "the sheriff 'knew that
he had the guilty man.'" Our Supreme Court held
that "[t]he import of such argument was an appeal
for conviction on the opinion of the sheriff." 221
Mich 134. This is not the case here. Defendant
seeks to link the foregoing two unrelated com-
ments to the likewise unrelated testimony of Offi-
cer Rudy in an attempt to fit this case within
*People v Boske.* We think this case is more like
*People v Moreno,* 112 Mich App 631, 635-636; 317
NW2d 201 (1981), where this Court distinguished
*Boske* on the ground that the questions asked of
the officer

> were not elicited in an attempt to persuade the
> jury to convict defendant because a police officer
> believed he was guilty. Furthermore, the questions
> and answers were not attempts to express the
> prosecution's belief in defendant's guilt but were,
> rather, questions about [the officer's] investigation.

The prosecutor argued for a conviction based on
neither the prestige of his office nor the opinion of
the police, and defendant was not denied a fair
trial by the prosecutor's remarks.

Affirmed.

Cavanagh, J., concurred.

Fitzgerald, J. *(concurring in part and dissenting in part)*. I respectfully dissent from the majority's conclusion that remand for an evidentiary hearing regarding intimidation of a prosecution witness is unnecessary in this case. It appears that the majority's reluctance to remand is based in large part on trial counsel's failure to request the court to address the issue of intimidation as well as the jury's awareness of the threats made to the witness. I do not believe that such factors preclude a finding of manifest injustice.

Prosecution intimidation of witnesses has been condemned, *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970), whether the witnesses are for the defense or the prosecution. *People v Crabtree,* 87 Mich App 722; 276 NW2d 478 (1979). I believe that a testimonial record must be developed to support defendant's argument on the issue and that remand for an evidentiary hearing is required. *Pena, supra; People v Hooper,* 422 Mich 875; 366 NW2d 6 (1985).