717 N.W.2d 889 (2006)
PEOPLE of the State of Michigan, Plaintiff-Appellant/Cross-Appellee,
v.
Dwight-Sterling David JAMBOR, Defendant-Appellee/Cross-Appellant.
Docket No. 259014.
Court of Appeals of Michigan.
Submitted April 12, 2006, at Detroit.
Decided May 2, 2006, at 9:00 a.m.
Released for Publication July 25, 2006.
*890 Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, David G. Gorcyca, Prosecuting Attorney, Joyce F. Todd, Chief, Appellate Division, and Danielle Walton, Assistant Prosecuting Attorney, for the people.
Mitchell, Lord & Associates, PLLC (by Gregory Fisher Lord), Southfield, for the defendant.
Before: COOPER, P.J., and MARK J. CAVANAGH and FITZGERALD, JJ.
*891 FITZGERALD, J.
The prosecution appeals as of right the trial court's order dismissing defendant's criminal prosecution for breaking and entering a building with intent to commit larceny. The court dismissed the case after granting defendant's motion to exclude evidence of four white fingerprint cards, one of which contained defendant's latent fingerprint, on the ground that the prosecution failed to lay a proper foundation for admission of the white cards. Defendant cross-appeals, challenging the denial of his motion to exclude evidence of three black fingerprint cards, none of which contained his latent fingerprints. We affirm.

I. Basic Facts
Defendant was charged with breaking and entering a building with intent to commit larceny, MCL 750.110. The charge arose from an incident at the Bloomfield Surf Club in Bloomfield Township. Bloomfield Township Police Officer Paul Schwab was dispatched to investigate the incident. He concluded that the perpetrator had gained entry by breaking a sliding glass window, and that approximately $50 had been stolen from an unlocked cash box. Evidence technician Robert Brien processed the crime scene, lifted fingerprints, and applied the prints to cards. Brien stated in his report that the latent prints from the point of entry and the cash box had been placed on file. By all accounts, at the time the prints were lifted, no potential suspects existed.
The latent prints were forwarded to the Oakland County Sheriff's Department and placed in the Automated Fingerprint Identification System (AFIS). Eventually, the AFIS identified one latent print on a white card as matching defendant's right middle finger, and defendant was charged with breaking and entering in connection with the incident. Defendant waived a preliminary examination and was bound over for trial.
Brien died before trial, and defendant subsequently moved to exclude seven cards containing latent prints purportedly gathered by Brien at the crime scene on the ground that they constituted inadmissible hearsay. Each of the seven cards had a latent print on one side and Brien's signature, the location of the lift, and information regarding the offense, including the complaint number and date, on the other side. Three of the seven cards were black and contained latent prints purportedly lifted from the cash box. It is undisputed that none of the latent prints on the black cards match defendant's fingerprints. The other four cards, one of which contained a latent print that matched defendant's fingerprint, were white and contained latent prints purportedly lifted from the sliding glass window. Following an evidentiary hearing, the trial court granted defendant's motion to exclude the four white cards on the ground that the prosecution failed to lay a proper foundation for admission of the white cards. The court denied defendant's motion to exclude the three black cards.

II. The White Cards
The prosecution argues that the trial court erred by concluding that the prosecution failed to provide the proper foundation for admission of the four white cards. We disagree.
This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence. People v. Watson, 245 Mich.App. 572, 575, 629 N.W.2d 411 (2001). We also review for an abuse of discretion the trial court's decision whether a proponent has sufficiently authenticated an item for admission into evidence. An abuse of discretion exists if an unprejudiced person would find no justification for the court's ruling. People v. Ford, 262 *892 Mich.App. 443, 460, 687 N.W.2d 119 (2004). A decision on a close evidentiary question ordinarily cannot be an abuse of discretion. People v. Sabin (After Remand), 463 Mich. 43, 67, 614 N.W.2d 888 (2000).
The prosecution argues that the white cards are admissible under the business records exception, MRE 803(6), or the public records exception, MRE 803(8), to the hearsay rule. But even if an exception to the hearsay rule would allow admission of the evidence, the exception does not absolve the offering party from the usual requirements of authentication.[1] Before demonstrative evidence can be admitted at trial, it must be properly authenticated or identified. "The burden rests with the party seeking to admit the evidence to show that the foundational prerequisites have been satisfied." People v. Burton, 433 Mich. 268, 304 n. 16, 445 N.W.2d 133 (1989). The proper foundation for admissibility of evidence is governed by MRE 901(a), which states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." See also People v. Furman, 158 Mich.App. 302, 331, 404 N.W.2d 246 (1987). Under MRE 901(b)(1), testimony of a witness with knowledge that "a matter is what it is claimed to be" can be used for authentication or identification.
The initial issue before this Court concerns the existence of foundational support for the prosecution's claim that the white cards contain latent prints that were actually lifted by Brien at the scene, i.e., that they are what they purport to be. The prosecution sought to authenticate the evidence primarily through the testimony of Schwab and the content of the cards themselves. Schwab testified that he arrived at the crime scene at approximately 11:30 a.m. and that Brien arrived after that. Schwab testified that he assisted Brien and "watched" Brien process the crime scene. He observed Brien apply graphite dust to the areas around the sliding glass window and the cash box, and then apply clear tape to lift the prints. Schwab explained that Brien then attached each piece of tape to one side of a black card and wrote on the other side of the black card. Schwab did not know the content of Brien's writing on the back of the cards at that time. Schwab testified that he observed Brien use only black cards, and there was no testimony that Brien used any white cards to process the crime scene. Schwab admitted that he could not state with certainty that the cards were prepared on August 20, 2003, absent the handwriting on the cards, and that he would have to rely on Brien's handwriting on the cards to know the location from which each print was lifted. In a supplemental police report prepared after Brien's death for the purpose of assisting in the admission of the latent prints on the cards, Schwab stated that he watched Brien lift "3 to 4 prints" with tape from the area surrounding the sliding glass window and "watched Brien secure the tape to a piece of black cardboard. . . ." In response to the trial court's inquiry, the prosecution was not able to offer a plausible explanation for the discrepancy between the color of the white card bearing defendant's latent fingerprint and Schwab's testimony.
Additionally, the prosecution relied on Schwab's and Bloomfield Township Detective *893 James Cutright's identification of Brien's signature on the white cards, as well as Schwab's testimony that the correct complaint number, offense, and date were listed on the white cards in Brien's handwriting. But the initial issue before this Court is not the authenticity or identification of the handwriting on the white cards as Brien's; rather, it is the existence of foundational support for the prosecution's claim that the white cards contain latent prints that were actually lifted from the crime scene, i.e., that they are what they are claimed to be. Furman, supra at 331, 404 N.W.2d 246. While one could speculate why defendant's latent fingerprint was on a white card rather than a black card, such speculation is not a sufficient basis to find that the trial court abused its discretion. Ford, supra at 460, 687 N.W.2d 119. Under these circumstances, we find that the trial court did not abuse its discretion by concluding that the prosecution failed to authenticate the four white cards and that the proper foundation for admission of the evidence was not established.[2]
In light of our holding that the trial court did not abuse its discretion by excluding the white cards on the ground that the prosecution failed to provide a proper foundation for admission of the evidence, the issues whether the white cards are admissible under the hearsay exceptions contained in MRE 803(6) or (8) and whether admission of the white cards would violate defendant's right of confrontation under Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), are moot. As a general rule, an appellate court will not review a moot issue. B P 7 v. Bureau of State Lottery, 231 Mich.App. 356, 359, 586 N.W.2d 117 (1998).

III. The Black Cards
We also find it unnecessary to address defendant's issues on cross-appeal concerning the admissibility of the three black cards. None of the latent fingerprints on the black cards matched defendant's fingerprints. Because we have concluded that the white card containing the latent fingerprint was properly excluded, and because the prosecution concedes that dismissal is required without the white card, consideration of this issue is not necessary.
Affirmed.
CAVANAGH, J., concurred.
COOPER, P.J. (concurring).
I join with the majority in result and analysis and write separately only because I find it necessary to address the hearsay issue presented by these facts. The majority begins the authentication analysis by positing "even if an exception to the hearsay rule would allow admission of the evidence. . .," ante at 892; I find that the fingerprint cards at issue here are hearsay not within any exception.
In People v. McDaniel, 469 Mich. 409, 410, 670 N.W.2d 659 (2003), our Supreme Court considered "whether a police laboratory report is admissible, notwithstanding that it is hearsay . . . ." In that case, a police officer who was a chemist analyzed a substance seized at a crime scene and found it to be heroin. Id. That officer did not testify at trial, but the report he had prepared was admitted over defense counsel's objection. Id. at 411, 670 N.W.2d *894 659. A divided Court of Appeals affirmed, and the Supreme Court reversed.
The Court considered MRE 803(6), the business records exception exempting records "kept in the course of a regularly conducted business activity" from exclusion even though they are hearsay. The Court found MRE 803(6) inapplicable, noting that "[t]he hearsay exception in MRE 803(6) is based on the inherent trustworthiness of business records. That trustworthiness is undermined when the records are prepared in anticipation of litigation." Id. at 414, 670 N.W.2d 659. The report in question was prepared in anticipation of litigation because its sole purpose was to establish an element of the crime charged, specifically that the substance at issue was indeed heroin. Similarly, here the fingerprint cards at issue are records prepared in anticipation of litigation, because their purpose was to document the presence of particular individuals at the scene of the crime. Plainly, to charge defendant with breaking and entering with intent to commit larceny, the prosecution must establish that defendant was present at the scene, and the fingerprint cards at issue here are out of court statements intended to prove the truth of that matter. The cards are therefore hearsay not within the exception allowed by MRE 803(6).
The Court also considered MRE 803(8), the public records exception exempting from exclusion public records and reports, but specifically excluding "in criminal cases matters observed by police officers and other law enforcement personnel. . . ." The Court referred to this Court's opinion in People v. Stacy, 193 Mich.App. 19, 484 N.W.2d 675 (1992), noting that decision's holding "that the exclusion of hearsay observations by police officers was intended to apply only to observations made at the scene of the crime or while investigating a crime." McDaniel, supra at 413, 670 N.W.2d 659. The Court reasoned from that decision that "MRE 803(8) allows admission of routine police reports, even though they are hearsay, if those reports are made in a setting that is not adversarial to the defendant." Id. The Court found that the report at issue was adversarial because it established an element of the crime charged, and that MRE 803(8) was therefore not applicable. Here we have what is arguably a routine police report, although made in anticipation of litigation, since it plainly serves the purpose of establishing a record of the presence of a particular individual at a crime scene. And we also have the observations of an officer made at the scene of the crime while investigating that crime. Under either the Stacy or the McDaniel analysis, MRE 803(8) precludes admission of the fingerprint cards.
At the crime scene, evidence technician Robert Brien allegedly lifted fingerprints, applied each print to one side of a card, and handwrote information on the other side of each card including the location of the lift, the complaint number, the date, and his signature. The prosecution sought to offer seven cards into evidence, three black and four white, but Brien, now deceased, was unavailable to testify as to the authenticity of the proffered cards or to the subject matter there contained. The prosecution was unable to produce a witness who could confirm that Brien had used white cards at this crime scene. These cards, offered to prove the truth of the matter that Brien lifted these prints from that location on that date, and by extension that defendant was present in that location on that date, are hearsay not within any exception.
Affirmed.
NOTES
[1] Our concurring colleague agrees that the prosecution failed to establish a foundation for the admission of the evidence, but additionally determines that the cards are hearsay that is not within any exception. We find it unnecessary to address this issue in light of our determination that the prosecution failed to properly authenticate the evidence.
[2] Under these facts, the prosecution's argument regarding the chain of custody is premature. "Once a proper foundation has been established, any deficiencies in the chain of custody go to the weight afforded to the evidence, rather than its admissibility." People v. White, 208 Mich.App. 126, 133, 527 N.W.2d 34 (1994) (emphasis added).