*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYREECE DEPREE PITTS,

        Defendant-Appellant.

UNPUBLISHED
February 26, 2019

No. 338673
Washtenaw Circuit Court
LC No. 16-000668-FC

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Tyreece Depree Pitts, appeals by right his bench convictions arising from a shooting that occurred in the early morning of June 23, 2016. The trial court convicted him of assault with intent to murder, MCL 750.83; first-degree home invasion, MCL 750.110a(2); carrying a concealed weapon, MCL 750.227; malicious destruction of police or fire department property, MCL 750.377b; resisting or obstructing an officer, MCL 750.81d; carrying or possessing a firearm while ineligible to do so (felon-in-possession), MCL 750.224f; carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b; intentionally discharging a firearm in a dwelling, MCL 750.234b; and armed robbery, MCL 750.529.[1] Defendant also appeals his sentences of 30 to 60 years in prison for his assault conviction, 12 to 20 years in prison for his home invasion conviction, 3 to 5 years in prison for his conviction of carrying a concealed weapon, 30 months to 4 years in prison for his malicious destruction of police property conviction, 15 months to 2 years in prison for his resisting or obstructing conviction, 3 to 5 years in prison for his felon-in-possession conviction, 2 years in prison for his felony-firearm conviction, 78 months to 10 years in prison for his discharge of a firearm in a dwelling conviction, and 30 to 60 years in prison for his armed robbery conviction. We affirm, but we remand for the ministerial task of correcting defendant's sentencing guidelines offense variable score.

---

[1] The trial court found defendant not guilty of malicious destruction of private property. See MCL 750.377a(1)(d).

# I. FACTS

Defendant's convictions arose out of a confrontation between himself and Johnny McCrary at McCrary's home. The incident began when McCrary noticed that defendant had backed his Suburban too far into McCrary's driveway and struck the building. McCrary recognized defendant because they had met once previously, and defendant was an acquaintance of McCrary's neighbor, Tammie Merideth. At the time of the incident, defendant was wearing a Red Wings jacket and a matching baseball cap. Defendant spoke with Merideth and indicated that he was there to go to McCrary's home. However, defendant acceded to Merideth's demand to move his vehicle. McCrary believed that defendant was therefore leaving and went to the restroom.

McCrary heard the door to his home open while he was in the restroom. He had not given anyone permission to come into his home, but he believed at the time that it might be Merideth. However, when he emerged, he found defendant standing in front of his television. McCrary testified that defendant began "talking to [McCrary] about trying to make a proposition, deal about something he's trying to get rid of, and he liked what was in [McCrary's] house." Defendant also mentioned "[r]unning what you got," which McCrary interpreted as interest in some money McCrary had left out. McCrary put the money away and told defendant that he should file a police report about crashing into his home. Defendant then left McCrary's home.

Merideth asked defendant for a cigarette while defendant was walking from McCrary's home to his Suburban. A passenger in defendant's Suburban gave Merideth a cigarette, and Merideth proceeded to smoke it near McCrary's door. Defendant then returned to McCrary's home and asked McCrary to buy "dope." McCrary refused, whereupon defendant produced a pistol that was missing its handgrip, racked it, and pointed it at McCrary. Defendant fired a shot into the floor, and McCrary fled from his home. Defendant pursued and fired several shots at McCrary. Merideth opened the door for McCrary and stood behind defendant while defendant was shooting. One shot went through McCrary's forearm, breaking the bone in the process. Another shot struck McCrary in the foot. McCrary began knocking on doors for help, and eventually someone called the police. By this time, McCrary was feeling sleepy. When the paramedics arrived, they considered McCrary to be in critical condition, and he was transported to the hospital by ambulance with its lights and sirens activated.

During the trip to the hospital, McCrary identified defendant as someone named "Tyreece," and stated that defendant had been wearing a red and black jacket. Police at the scene of the shooting interviewed Merideth and set up a perimeter. Based on information Merideth gave, the police went to a residence where they observed a man, later confirmed to be defendant, in a Red Wings jacket and a black baseball cap next to a Suburban. The police activated their patrol car lights, announced that they were police officers, and ordered defendant to get down. Instead, defendant ran into a wooded area behind the residence, losing his baseball cap in the process, and re-emerged shortly thereafter without his jacket. The police again ordered defendant to get down, and defendant complied. Defendant was then arrested.

Officers then searched the wooded area for the missing Red Wings jacket. The jacket was found five or six feet down a slope. In the pocket of the jacket was a handgun missing its handgrip. At trial, a firearm and tool mark expert, Detective Dean Molnar, testified that the

handgun found in the jacket had been used to fire all of the bullet casings recovered from the scene. During the trial, defendant moved for directed verdicts, arguing that there was no evidence he had demanded money or intended to kill McCrary, thereby precluding convictions for armed robbery or assault with intent to commit murder. Defendant also argued that his offer to sell McCrary drugs suggested that he had permission to enter the home. The trial court disagreed and denied defendant's motions for directed verdicts. The trial court then convicted defendant as described above.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he received ineffective assistance of counsel. Specifically, defendant argues that because Molnar was not on the prosecution's original witness list, trial counsel should have objected to Molnar's testimony. We disagree.

### A. STANDARD OF REVIEW

Defendant did not move for a new trial or an evidentiary hearing on the grounds of ineffective assistance of counsel, so our review is limited to the existing evidentiary record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel's performance is strongly presumed to be based on "a sound trial strategy." *Id*. at 52. "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland v Washington*, 466 US 668, 694; 104 St Ct 2052; 80 L Ed 2d 674 (1984).

### B. ANALYSIS

The prosecution did not initially include Molnar on its witness list. Less than two weeks before trial, the prosecutor advised the trial court that she had just received a ballistics report and provided it to the defense. However, the defense refused to stipulate to the admission of the report, so she had to "get the ballistics forensic guy." At trial, defense counsel stipulated to Molnar testifying as an expert. After Molnar gave his testimony, the attorneys stated on the record that the prosecutor had advised defense counsel that Molnar would be added to the witness list, and defense counsel had agreed to stipulate that Molnar was an expert. Defendant argues that defense was ineffective for failing to object to Molnar's endorsement or seek an adjournment to better prepare for Molnar's testimony. We disagree.

The prosecutor may add or delete witnesses from the prosecution's witness list at any time with the defense's agreement or with the trial court's permission for good cause shown. See *People v Everett*, 318 Mich App 511, 519; 899 NW2d 94 (2017), citing MCL 767.40a. The

record shows that the prosecutor did not have notice of Molnar until after she filed her witness list, and she made the defense aware of Molnar as soon as practicable. The recent discovery of a witness constitutes good cause for late endorsement. See *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992). Furthermore, precluding a witness from testifying "is extreme and should be limited to only the most egregious cases." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

In any event, considerable eyewitness testimony and circumstantial evidence linked defendant to the gun and the bullets even without Molnar's testimony. A reasonable defense attorney could conclude that objecting to Molnar would have been both futile and unhelpful. Instead, defense counsel could reasonably elect to concentrate on issues more likely to succeed, such as challenging evidence of defendant's intent rather than evidence of defendant's conduct. See *People v Matuszak*, 263 Mich App 42, 60; 687 NW2d 342 (2004). Because there was a legitimate strategic reason for allowing Molnar's late endorsement and for allowing his testimony to go unrebutted, defendant has not overcome the presumption that defense counsel's decision was a matter of sound trial strategy. Defendant has therefore not established that he received ineffective assistance of counsel.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that evidence presented at trial was insufficient to convict him of armed robbery, home invasion, and assault with intent to murder beyond a reasonable doubt. We disagree.

### A. STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence by examining the "record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

### B. ARMED ROBBERY

"Armed robbery is a specific intent crime, requiring proof that the defendant intended to permanently deprive the owner of his or her property." *People v Crawford*, 325 Mich App 14, ___; ___ NW2d ___ (2018). Defendant argues that the evidence did not establish the requisite specific intent. He argues that the evidence only reflects a dispute after a failed drug deal. He further argues that there was no evidence he said anything to McCrary when he returned to McCrary's home and brandished his handgun. He concludes that the only indication of an intent to steal was McCrary's subjective assessment of events, which should not be given any weight.

We disagree. Defendant's statement to Merideth that he was going to McCrary's home does not establish a prearranged drug deal as defendant suggests, and McCrary's decision to use the restroom upon the belief that defendant was leaving suggests that in fact no drug deal was contemplated. According to McCrary's testimony, defendant indicated that he wanted McCrary's possessions, and defendant only brought up a drug deal after McCrary put his money away. McCrary also indicated that defendant's proposed drug deal was unreasonable and that defendant was "pushing." The fact that defendant left McCrary's home briefly before returning

-4-

uninvited does not necessarily show that defendant lacked the intent to steal. Rather, given the short duration of the interlude and defendant's clearly intentional demonstration of force, a reasonable trier of fact could conclude that defendant continued to covet McCrary's possessions and intended to frighten McCrary into compliance.

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). It is the exclusive role of the trier of fact to evaluate the credibility of witnesses and determine how to resolve factual conflicts. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). Defendant's conviction of armed robbery does not depend on impermissible speculation. See *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996).

## C. HOME INVASION

Defendant next argues that there was insufficient evidence to establish that he committed a home invasion. Defendant specifically challenges the first element of first-degree home invasion, which requires either that defendant broke and entered a dwelling, or that defendant entered a dwelling without permission. *People v Baker*, 288 Mich App 378, 384; 792 NW2d 420 (2010). Defendant contends that there was no evidence showing that he broke and entered McCrary's home or that he entered without permission.

To the contrary, McCrary testified that he had given no one permission to enter his home. McCrary also testified that his door was closed prior to discovering defendant inside his home. "A breaking is any use of force, however slight, to access" the home. See *Heft*, 299 Mich App at 76. Defendant necessarily used some force to open the door. Defendant disputes McCrary's testimony as incredible. However, as discussed, it is the exclusive role of the trier of fact to evaluate witness credibility. Defendant has not articulated how McCrary's testimony was so patently absurd or impossible that we should invade that role. See *People v Lemmon*, 456 Mich 625, 642-644; 576 NW2d 129 (1998). The trier of fact could reasonably conclude that the first element of first-degree home invasion was established under either alternative.

## D. ASSAULT WITH INTENT TO MURDER

Defendant argues that the prosecution failed to present sufficient evidence that he had the intent to kill McCrary, which is an essential element of the offense of assault with intent to murder. See *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). He concedes that there was evidence that he fired at least three shots at McCrary and that two rounds struck McCrary. Nevertheless, he argues that, had he wanted to kill McCrary, he could have shot him at close range in his home or could have shot him in a "more damaging part of the body than his foot and arm."

An intent to kill may be inferred from the totality of the evidence, including the nature and inherent dangerousness of the instrument used by a defendant. See *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985), and *People v Carines*, 460 Mich 750, 759-760; 597 NW2d 130 (1999). The evidence showed that defendant chased McCrary from McCrary's home, turned

in the same direction that McCrary fled, and fired at least three shots at McCrary as he fled. McCrary testified that he suffered his first gunshot wound as he was passing his neighbor's window, located a few feet from McCrary's front door. Defendant continued to fire at McCrary and struck him one additional time. The evidence that defendant followed McCrary and fired several shots from a lethal weapon at close range was sufficient to support the finding that defendant intended to kill McCrary. See *Taylor*, 422 Mich at 568. Unlike the gunshot inside McCrary's home, nothing about defendant's subsequent shots in any way suggests an intentional avoidance of lethality.

We conclude that defendant has not established that there was insufficient evidence to support any of his convictions.

## IV. SENTENCING ERRORS

Defendant next argues that the trial court erred when it scored offense variables 3, 4, 6, 7, 9, and 17. We disagree with defendant's arguments on all offense variables except OV 17.

## A. STANDARD OF REVIEW

The sentencing guidelines are merely advisory, but trial courts nevertheless must accurately score the guidelines and consult them when imposing sentences. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may also rely on reasonable inferences from the record evidence. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). A particular guidelines score must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). We review for clear error a trial court's findings in support of particular score under the sentencing guidelines, but review de novo whether the trial court properly interpreted and applied the guidelines. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's finding is clearly erroneous when this Court is left with the definite and firm conviction that it had made a mistake. See *McChester*, 310 Mich App at 358.

## B. OFFENSE VARIABLE 3

A trial court must assess 25 points under OV 3 if it finds that "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). One paramedic characterized McCrary's injuries as "moderate," but noted that the ambulance used its lights and sirens during the trip to the hospital, which indicated the potential for life-threatening injuries. The senior paramedic expressly testified that he considered McCrary's injuries to be "a life-threatening situation." The trial court properly assessed 25 points under OV 3.

## C. OFFENSE VARIABLE 4

The trial court must score 10 points under OV 4 if it finds that "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The victim

need not actually seek treatment if the court finds that the victim's injury "may require professional treatment." MCL 777.34(2).

McCrary testified that he had been a bodybuilder before defendant shot him, and he had loved working out. The damage to the bone in his arm required implantation of a rod, he was in constant pain, and not only could he no longer work out, he could no longer perform simple actions like giving a "thumbs up," and he could not shake hands without pain. He characterized the injury to his arm as a tattoo that forever reminded him of defendant, and stated that defendant's "name will ring through [his] head forever. Forever." When defense counsel objected to McCrary's "blatant statements" that defendant could have killed him that night, McCrary interjected that not only "could [he] have died that night," he wished that he "would have died." McCrary also testified that the shooting caused interference with his relationship with his children, and that defendant "took a part of [him]" that day. McCrary testified that his children asked why someone had shot him while they pushed him in a wheelchair. We are not definitely and firmly convinced that the trial court erred in finding by a preponderance of the evidence that McCrary had suffered a serious psychological injury that may require professional treatment. Therefore, the trial court properly assigned 10 points under OV 4.

## D. OFFENSE VARIABLE 6

The trial court must score 50 points under OV 6 if it found that defendant "had [the] premeditated intent to kill" McCrary. MCL 777.36(1). Defendant contends that no evidence supported such a finding. As discussed above, the evidence showed that defendant pursued McCrary and fired several shots at McCrary as he fled, striking him twice. Similar evidence has been found sufficient to support a finding of premeditation and deliberation in the context of a first-degree murder conviction. See *People v Tilley*, 405 Mich 38, 45-46; 273 NW2d 471 (1979). The trial court did not clearly err by finding by a preponderance of the evidence that defendant premeditated killing McCrary. It therefore properly assigned 50 points under OV 6. To the extent defendant contends that trial counsel should have objected to the trial court's scoring of OV 6, we disagree, because any such objection would have been meritless. See *Ericksen*, 288 Mich App at 201.

## E. OFFENSE VARIABLE 7

The trial court must score 50 points under OV 7 if it finds that that a "victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Defendant admits that the evidence that he racked his gun before firing into McCrary's floor warrants 50 points under OV 7 pursuant to *Hardy*, 494 Mich at 444-445. Defendant argues that *Hardy* is no longer good law because the Legislature amended OV 7 to add a requirement that the conduct must be similarly egregious to sadism, torture, or excessive brutality. See 2015 PA 137.

However, our Supreme Court clearly still considers *Hardy* to be good law. *People v Roberson*, 500 Mich 929; 889 NW2d 486 (2017). As this Court has explained, OV 7 continues to address a defendant's conduct intended for the purpose of substantially increasing a victim's fear. *People v McFarlane*, ___ ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No.

336187, slip op at pp 11-12). Defendant's act of racking his gun and firing a shot into McCrary's floor amply show that defendant went beyond the minimum conduct necessary to commit a robbery and intended to substantially increase McCrary's fear. The trial court properly scored 50 points under OV 7.

## F. OFFENSE VARIABLE 9

The trial court must score 10 points under OV 9 if "2 to 9 victims were placed in danger of physical injury or death." MCL 777.39(1)(c). The trial court must treat "each person who was placed in danger of physical injury," in relevant part, "as a victim." MCL 777.39(2)(a). The trial court scored OV 9 at 10 points because it considered Merideth to be a victim. Defendant argues that Merideth cannot be a victim because no evidence showed that she was ever in the line of fire.

However, OV 9 does not require proof that a person was in the direct line of fire before he or she can be treated as a victim. Rather, it only requires evidence that a person was placed in danger of physical injury as a result of the defendant's conduct. See MCL 777.39(2)(a); see also *People v Sargent*, 481 Mich 346, 350 n 2; 750 NW2d 161 (2008). Defendant's act of firing a gun in a residential neighborhood clearly displays a gross disregard for the safety of anyone and everyone in the vicinity. Given the possibility of ricochets, misfires, or an accidental discharge while defendant pursued McCrary, the trial court could reasonably infer that Merideth was in danger merely because she was nearby. Because Merideth could have been injured, she was in danger of physical injury because of defendant's conduct. The trial court therefore did not clearly err in finding at least two victims for purposes of scoring OV 9.

## G. OFFENSE VARIABLE 17

A trial court must assess 10 points under OV 17 if defendant's conduct "showed a wanton or reckless disregard for the life or property of another person." Defendant's conduct in this case unambiguously shows the requisite degree of negligence. However, the trial court is not permitted to score 10 points under OV 17 if it scored points under OV 6. As discussed, the trial court properly scored 50 points under OV 6. Consequently, the trial court erred by scoring OV 17, as the prosecutor concedes on appeal.

Nevertheless, defendant is not entitled to resentencing on this basis. Defendant's total OV score was 215 points.[2] Because his total was greater than 99 points, defendant's OV level for a Class A felony was VI. He also had the highest level for his prior record variables. Therefore, his recommended minimum sentence range was 270 to 450 months in prison or life. See MCL 777.62. A reduction of defendant's OV score to 205 points would not alter his guidelines range, so the scoring error does not warrant resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

---

[2] The prosecutor notes that the trial court erroneously recited the total score as 225 points.

To the extent defendant argues that his trial counsel should have objected to the scoring of OV 17, any such objection would not likely have altered the outcome of defendant's sentencing. As noted, defendant's guidelines range would be unchanged. The trial court stated its belief that the range was reasonable, and it concluded that the facts warranted a sentence in the middle of that range. Any error by trial counsel was harmless. Nevertheless, defendant is entitled to a correct sentencing information report. We therefore remand to the trial court for the ministerial task of correcting defendant's total OV score to 205 points.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises numerous additional challenges to the lower court proceedings in a brief submitted under Michigan Supreme Court Order No. 2004-6, Standard 4. Criminal defendants appearing *in propria persona* are entitled to "be held to less stringent standards than formal pleadings drafted by lawyers," but they remain obligated to provide at least some support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976) (internal quotation and citation omitted). To the extent we can comprehend defendant's arguments, we find them to be without merit.

### A. WITNESS INTIMIDATION OR FALSE TESTIMONY

It is a violation of due process for the prosecution to present coerced testimony or to withhold evidence affecting a prosecution witness' credibility. See *People v Canter*, 197 Mich App 550, 569; 496 NW2d 336 (1992); *People v Stacy*, 193 Mich App 19, 25; 484 NW2d 675 (1992). Defendant argues that Merideth falsely identified him as the shooter after being coerced into providing conflicting accounts. However, defendant has the burden of providing some evidence in support of this proposition. See *Stacy*, 193 Mich App at 28-30. Defendant vaguely refers to inconsistencies in her testimony, but inconsistent testimony does not establish that Merideth was coerced. Rather, inconsistencies go to the weight and credibility of her testimony and are the proper subject of cross-examination. See, e.g., *Lemmon*, 456 Mich at 642-643. Any inconsistencies are for the finder of fact to resolve. See *People v Muhammed*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 338300, slip op at p 15).

Defendant also argues that Merideth inaccurately identified defendant after the police showed her photographs of defendant's brother, who may have been involved in a separate criminal matter. However, the evidence indicated that Merideth knew defendant well and clearly had an independent basis for identifying him as the person involved. See *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998) (discussing the independent basis doctrine for identifications). Accordingly, defendant has not identified any error with regard to the admission of Merideth's testimony.

Defendant similarly argues that McCrary was coerced into testifying, apparently because no bullet or bullet-hole from the interior of McCrary's home was introduced into evidence. Defendant also contends that an evidence technician who testified about a shell casing recovered from the interior of McCrary's home must be lying, again because no bullet-hole was presented. Defense counsel cross-examined both McCrary and the technician, whose testimonies were consistent with each other, and the trier of fact was able to evaluate their credibilities. Defendant has not established any basis for showing coercion. See *Stacy*, 193 Mich App at 28-30.

## B.  EVIDENTIARY PROBLEMS OR ERRORS

Defendant argues that shell casings recovered from the scene could not possibly have come from a gun discharged in front of McCrary's home.  Apparently, this is because one of them was found in a flower bed, and one of them was found on the lawn between McCrary's home and a neighboring residence.  The officer who recovered the shells testified, however, that although one was in a flower bed and one was on the lawn, both locations were "just outside the front door."  Without more, we cannot find any merit to defendant's objection.

Defendant contends that a video recording from an officer's body camera should have been produced.  A still image from the video was introduced into evidence with no objection.  Defendant does not explain whether he believes the video should have been produced during discovery or admitted at trial, and in any event, he does not explain how the video would have benefitted the defense.  We find no merit to this objection.

Defendant argues that the officers who arrested him failed to advise him of his rights as required under the decision in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).  The prosecution may not admit a custodial interrogation at trial if the custodial interrogation was not preceded by the warnings required under *Miranda*.  See *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013).  However, defendant presents no proof that he was not given a *Miranda* warning, and in any event, he has not identified any custodial statements that he made that were admitted at trial.  Defendant has therefore not established that he was prejudiced.

Defendant generally revisits the argument that Molnar should not have been permitted to testify.  As discussed previously, we reject this argument.

Defendant finally argues that the evidence of the Red Wings jacket and its contents found in the woods contemporaneous to his arrest should have been suppressed.  Defendant contends that there was no evidence to connect the items to him.  The evidence is clearly sufficient for the trier of fact to infer that the handgun was the same handgun used in the shooting, and the jacket was the same jacket defendant disposed of just before his arrest.  Defendant has not established any other grounds for excluding the evidence.

## C.  TRIAL COUNSEL

Defendant next argues that the trial court should have disqualified his appointed trial counsel, on the grounds that trial counsel worked for the same firm as another attorney who had previously been appointed for defendant.  However, the right to appointed counsel does not include the right to choose one's own lawyer.  See *People v Russell*, 471 Mich 182, 192 n 25; 684 NW2d 745 (2004).  A right to substitute counsel requires a showing of good cause.  See *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011).  Good cause might include a genuine disagreement with trial counsel over the use of a substantial defense or a fundamental trial tactic, but does not include a mere allegation that he lacked confidence in his lawyer.  See *People v Traylor*, 245 Mich App 460, 462-463; 628 NW2d 120 (2001).  Defendant has not presented any evidence that he had good cause for substitute counsel beyond disappointment in

the outcome of the representation. Good cause does not include merely working for the same firm as a prior attorney. See *Strickland*, 293 Mich App at 397.

Defendant also argues that trial counsel should have further explored inconsistencies in witnesses' testimonies. However, defendant does not sufficiently articulate how counsel should have done so. Therefore, defendant has not overcome the presumption that defense counsel acted within the wide range of reasonable professional conduct.

## D. PRELIMINARY EXAMINATION

Defendant raises several arguments regarding his preliminary examination and bindover. However, any errors involving the preliminary examination are harmless if the defendant was subsequently convicted at an otherwise fair trial. See *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016). "[T]he presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Because defendant has not shown that the prosecutor presented insufficient evidence at his trial or that his trial was otherwise unfair, any errors involving his bindover for trial were harmless. See *Johnson*, 315 Mich App at 200 n 7; *Bennett*, 290 Mich App at 481.

## E. OTHER CONCERNS

Defendant asserts a variety of other arguments. However, we find these remaining arguments too cursory to comprehend and too unsupported to address. Even under the "less stringent standards" to which a criminal defendant *in propria persona* is held, we conclude that defendant's remaining claims of error are insufficiently briefed and are therefore abandoned. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

## VI. CONCLUSION

Defendant's convictions and sentences are affirmed. However, we remand to the trial court for the ministerial task of correcting defendant's offense variable score as described above. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause