*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHANIEL ROYAL LATHAM,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2019

No. 344446
Ingham Circuit Court
LC No. 17-000486-FH

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of first-degree home invasion, MCL 750.110a(2)(a), domestic violence, MCL 750.81(2), aggravated stalking, MCL 750.411i(2)(a), and assault by strangulation, MCL 750.84(1)(b). He was sentenced to prison terms of 60 to 240 months for the first-degree home invasion conviction, 90 days for the domestic violence conviction, 30 to 60 months for the aggravated stalking conviction, and 60 to 120 months for the assault by strangulation conviction.[1] Defendant appeals as of right, and we affirm.

## I. BASIC FACTS

In March 2016, the victim, a lieutenant with the Michigan Department of Corrections, began training with defendant, a competitive body builder and owner of a fitness studio, for a body building competition. Shortly thereafter, the victim and defendant began a romantic relationship. Beginning in July 2016, defendant frequently spent nights at the victim's apartment and was free to come and go. In February 2017, the victim ended her relationship with defendant because of abuse and took a number of steps to ensure that defendant knew that she did not want any contact with him. Defendant continued to contact the victim through text messages, phone calls, and visits to her apartment without warning. The messages caused the

---

[1] The jury found defendant not guilty of the charge of interference with electronic communications, MCL 750.540(5)(a).

victim to believe that defendant was stalking her, and in some of the messages defendant threatened to commit suicide.

In early April 2017, the victim was awakened early in the morning by vehicle lights shining into her bedroom window. She looked outside and saw defendant standing beside her car. After a few seconds, defendant appeared to strike the front driver's side of the windshield with what appeared to be a hammer. Defendant then stared at the victim's bedroom window before getting into his truck and driving away. The victim was terrified by the incident because of defendant's past abuse. The officer who responded to the victim's 911 call testified that the victim said that she believed her former boyfriend smashed her windshield with a hammer. The victim and the officer went outside to the car and confirmed that the windshield was broken.

On April 17, 2017, defendant appeared outside of the sliding glass door at the back of the victim's apartment, and she told him to leave. Defendant pulled on the sliding glass door and was able to defeat the lock, but a wooden dowel in the track prevented the door from opening more than two inches. The victim called 911, but defendant was gone by the time the police arrived. While an officer was at the victim's apartment, defendant called the victim's cell phone multiple times. The victim told defendant not to call her again and then handed her phone to the officer. The officer confirmed that he was speaking with defendant and told defendant that the victim "was seeking a PPO [personal protection order]." According to the officer, defendant said that a PPO was not going to stop him and that he was not going to leave the victim alone. The victim could not recall whether she filed for the PPO before or after the incident, but on the basis of the time on the police report with respect to the incident, she believed that she filed for the PPO after the incident. The ex parte PPO was issued at 1:33 p.m. that day. The proof of service attached to the PPO indicates that the PPO was served by first-class mail on May 17, 2017, and by a process server tacking the PPO on the door at defendant's address on that date.[2] Defendant continued to contact the victim and send threatening messages to her despite her continued request, which was reiterated on this date, that he not contact her.

On May 18, 2017, the victim arrived home from work around 10:00 p.m. and followed her normal routine of locking the doors to her apartment and closing the blinds before going to bed. She was awakened by the light in her bedroom being turned on and she observed defendant standing in the doorway to her bedroom. The victim "froze" in fear, and defendant ran to her bed, put both hands around her neck, and squeezed for two to four seconds with enough force that the victim could not breathe. The victim was able to throw herself onto the floor after defendant released his grip. She screamed and told defendant to "get out." Defendant told the victim to stop screaming and walked toward her with the back of his hand raised toward her. When the victim stopped screaming, defendant backed away from her and she was able to grab a gun from her nightstand. Defendant put his hands up and said that he wanted to talk as he was stepping backward out of the bedroom and into the living room. As the victim approached the

---

[2] The PPO prohibited defendant from entering onto the property where the victim lived, from assaulting, attacking, beating, molesting, or wounding the victim, from threatening to kill or physically injure the victim, and from purchasing or possessing a firearm.

doorway into the living room, she noticed that the sliding glass door was open. She ran out the sliding glass door and across a grassy area leading to a pond behind her apartment. Defendant was about six feet behind the victim when she approached the edge of the pond, so she fired one shot at the ground in front of her to get his attention "and make him stop."[3] Defendant ran off, and the victim went back into her apartment and locked the sliding glass door. She noticed that the dowel that had been in the track was set off to the side. The victim said that she had noticed a wire hanger fall out of defendant's pocket while he was in her bedroom and that defendant had picked up the hanger and put it back into the pocket of his hoodie.

A detective testified that the victim demonstrated to him that the lock mechanism on the sliding glass door could be broken with a "pull" and that a wire hanger could be used between the two glass door panels to flip the dowel out of the track and allow the door to slide open. The detective documented in his report that a hanger was used to gain access to the apartment. A neighboring tenant testified that she heard raised voices and arguing late at night on May 18 or early in the morning of May 19 and that she heard a "big bang."

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to sustain his convictions because the victim's testimony was not credible and there were no witnesses or physical evidence to corroborate her testimony. We disagree. A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

The prosecution is not required to offer evidence corroborating a witness's testimony when she testifies from her own personal knowledge because the credibility of the witness presents an issue for the jury. *People v Alexander*, 142 Mich App 231, 234; 370 NW2d 8 (1985). "A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict." *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976). The credibility of a witness presents a matter of weight, not sufficiency, of the evidence. See *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1988) ("[T]he credibility of witnesses is a matter of weight, not sufficiency. Determinations of credibility are made by the jury which heard the testimony and observed the witnesses, and this Court will not substitute its judgment on this issue."). Similarly, the prosecution is not required to produce physical evidence linking defendant to the crime. *Alexander*, 142 Mich App at 234. Because the jury resolved the issue of the credibility of the testimony in favor of the complainant and we view the evidence in the light most favorable to the prosecution, defendant's sufficiency of the evidence challenge to his convictions fails.

---

[3] An officer was unable to locate a bullet in the grassy area using only a flashlight and the naked eye, but he testified that he found a hole in the ground approximately 10 or 15 feet directly behind the victim's patio that appeared to be from a bullet.

## III. SENTENCE

Defendant argues that the sentences imposed for his first-degree home invasion, assault by strangulation, and aggravated stalking convictions are disproportionate and therefore unreasonable. However, the 60-month minimum sentence imposed for defendant's first-degree home invasion conviction was within the recommended guidelines range of 36 to 60 months. A minimum sentence that is within the recommended guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). The sentence must be affirmed "unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). Defendant's claim in his Standard 4 brief that defense counsel was ineffective by failing to object to inaccurate information in the presentence information report (PSIR) is without merit.[4] Therefore, defendant's sentence for first-degree home invasion must be affirmed. Because defendant's assault by strangulation and aggravated stalking sentences run concurrent to his first-degree home invasion sentence, any error would have no effect on defendant's prison time and is, therefore, harmless. See *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014). Similarly, defendant's unpreserved argument that his sentence amounts to cruel and/or unusual punishment because his sentence is disproportionate is without merit as defendant's sentence for first-degree home invasion is within the guidelines range and is not disproportionate. Defendant has not established plain error.

## IV. STANDARD 4 BRIEF[5]

### A. ADMISSIBILITY OF THE VICTIM'S TESTIMONY

Defendant argues that the victim's testimony should have been stricken because the victim was not credible and her testimony was inconsistent and was impeached. We disagree. This issue is not preserved because defendant failed to challenge the admissibility of the evidence. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Unpreserved claims of evidentiary error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Defendant's argument focuses on alleged inconsistencies in, and alleged impeachment of, the victim's testimony. This argument pertains to the victim's credibility and the weight to be given to her testimony, and not to the admissibility of her testimony. Weight and credibility of

---

[4] See Issue IV(E), *infra*.

[5] Defendant's brief did not provide a statement of questions presented, merely contained a narrative of issues, and failed to cite any authority to support his position, *People v Powell*, 278 Mich App 318, 325-326; 750 NW2d 607 (2008). Despite this deficiency, we nonetheless address the merits of his claims.

the testimony are for the trier of fact to determine. *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Defendant has failed to show plain error.

## B. DOUBLE JEOPARDY

Defendant appears to be arguing, for the first time on appeal, that his convictions of domestic violence and assault by strangulation violate the protection against double jeopardy. We disagree. To preserve a claim that a defendant's convictions violate the protection against double jeopardy, the defendant must raise the issue with the trial court. *People v Barber*, 255 Mich App 288, 291; 659 NW2d 674 (2003). "However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). This Court reviews an unpreserved double jeopardy claim for plain error affecting defendant's substantial rights. *Barber*, 255 Mich App at 291.

Because defendant was convicted of and sentenced for both domestic violence and assault by strangulation arising from the same conduct at the same trial, a double jeopardy argument in this case would involve the multiple punishments strand of double jeopardy. The Double Jeopardy Clauses of the United States Constitution and Michigan Constitution protect against multiple punishments for the same offense. *People v Ford*, 262 Mich App 443, 447-448; 687 NW2d 119 (2004). In deciding whether two convictions violate the constitutional protections against double jeopardy, the reviewing court must examine whether the two offenses involve the same elements. *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007). A defendant's conviction of two criminal offenses does not violate the constitutional protection against double jeopardy if each statute requires proof of an element that the other does not. *People v Ream*, 481 Mich 223, 236-240; 750 NW2d 536 (2008). This test focuses on the statutory elements of the crimes, not the particular facts of the case. *Id*. at 238.

MCL 750.81(2) prohibits domestic assault,[6] while MCL 750.84(1)(b) prohibits assault "by strangulation or suffocation[.]"[7] The specific element that describes suffocation as the method of committing the harm in the assault by strangulation statute is not present in the domestic assault statute. Domestic assault does not require strangulation, and strangulation is not the only way to assault another person. A defendant may be guilty of domestic assault without also being guilty of assault by strangulation. And domestic assault requires that the defendant and the victim are spouses or former spouses, are in or had a dating relationship, have

---

[6] The elements of domestic assault are (1) the commission of an assault or an assault and battery and (2) the defendant and the victim are spouses or former spouses, are in or had a dating relationship, have a child in common, or are residents of the same household. MCL 750.81(2); *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011); *People v Corbiere*, 220 Mich App 260, 266; 559 NW2d 666 (1996).

[7] The elements of assault by strangulation are: (1) an assault, and (2) the intentional "impeding [of] normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(1)(b), (2).

a child in common, or are residents of the same household. Therefore, the offenses require proof of an element that the other does not. Defendant's convictions of both domestic assault and assault by strangulation do not violate the constitutional protection against double jeopardy.

## C. JUDICIAL BIAS

Defendant contends that he was denied a fair trial by judicial bias because the trial court refused to reinstate defendant's bond and in light of numerous statements or actions by the judge throughout the trial. We disagree. To preserve an issue of judicial bias, a party must raise the claim before the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not raise a claim of judicial bias with respect to the denial of his motions to reinstate bond, nor did he raise the issue of judicial bias at trial or in the trial court. This unpreserved issue is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

A defendant has a right to a neutral and detached judge. *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.*

Defendant presents his assertions of judicial bias in a cursory manner with no citation to legal authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). To the extent that defendant has insufficiently briefed these assertions, he has abandoned them. Nonetheless, defendant's selected statements and actions by the trial court throughout the trial neither show bias nor pierce the veil of judicial impartiality because they do not create the appearance of advocacy or partiality. The court properly controlled the proceedings and had legitimate reasons for its comments and rulings. The judicial rulings by the court did not indicate that fair judgment was impossible, and defendant failed to overcome the presumption of judicial impartiality. *Cain v Dep't of Corrections*, 451 Mich 470, 496-497; 548 NW2d 210 (1996). Defendant has failed to demonstrate plain error affecting his substantial rights.

## D. FACTS NOT PRESENTED AT SENTENCING

Defendant submits that the court was not informed at sentencing that he agreed to work with the Lansing Police Department (LPD) and the Ingham County Prosecutor's Office and that a proffer was signed by an assistant prosecutor. Defendant never asserted in the trial court that the court was not made aware of facts relevant to his sentencing. This issue is not preserved. *People v Stacy*, 193 Mich App 19, 28; 484 NW2d 675 (1992). Unpreserved claims are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

There is no factual support in the record for defendant's claim. Further, defendant does not explain why his alleged "work" with the LPD should have been raised at his sentencing, nor does he explain what effect, if any, the information would have had on his sentencing.[8] He has presented no claim for this Court to review. This issue is abandoned. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008) (issues not adequately briefed are deemed abandoned).

## E.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective by failing to object to errors in the PSIR, by implying that defendant had been in a fight while in the county jail, by failing to call the "CSI investigator" and the victim's neighbor to show that the victim's testimony was inconsistent and not credible, and by failing to object to the introduction of messages that defendant claimed he had never seen.

A defendant must move in the trial court for a new trial or an evidentiary hearing to preserve a claim of ineffective assistance of counsel. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This claim is not preserved because defendant did not file a motion for a new trial or for a *Ginther*[9] hearing in the trial court. Accordingly, this Court's review is limited to mistakes apparent from the record. *Heft*, 299 Mich App at 80.

Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews findings of fact for clear error and questions of law de novo. *Id.*

The right to the effective assistance of counsel is guaranteed by the United States and Michigan Constitutions. *Schrauben*, 314 Mich App at 189-190. To prevail on a claim of ineffective assistance of counsel, a defendant must show: "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.* at 190. Because the effective assistance of counsel is presumed, the burden is on a defendant to prove otherwise. *Id.* A defendant also bears "the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Additionally, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). It is strongly presumed that counsel engaged in sound trial strategy, and this Court will not second-guess counsel's trial strategy or assess counsel's competence with the benefit of hindsight. *Id.* Moreover, defense counsel does not

---

[8] Defendant had the opportunity to address the court at sentencing but did not inform the court of the information that he now claims should have been presented.

[9] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

have an unconditional obligation to call every witness suggested by a defendant. *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). The fact that a trial strategy is ultimately unsuccessful does not inherently render counsel ineffective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). The failure to call a witness constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v Anderson*, 322 Mich App 622, 631; 912 NW2d 607 (2018). A substantial defense is one that might have affected the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defendant first argues that trial counsel was ineffective by failing to object to purportedly inaccurate information in the PSIR that was relied on by the court in sentencing defendant.[10] He contends that the PSIR stated that there were three victims who had received PPOs against defendant between 2015 and 2017, but he claims that one of the PPOs was rescinded and that the PPO in the present case was never served on him. Even assuming that one of the PPOs was later rescinded, such a rescission would not alter the fact that the PPO had been issued. And a PPO is effective and immediately enforceable anywhere in this state after being signed by a judge. MCL 600.2950a(9). The PPO in this case was signed on April 17, 2017. Defendant has failed to demonstrate that the PSIR contained inaccurate information to which defense counsel should have raised an objection.

Defendant next argues that his counsel was ineffective by implying to the court that defendant had been in a fight while at the county jail, which was why he was injured at the time of the pretrial, and that this information put him in a negative light in the eyes of the court. In actuality, in requesting an adjournment of trial, defense counsel told the court that defendant "got clobbered in jail" and "still got a slice and a black eye" from getting "suckered." Defense counsel asked for the adjournment because "jurors notice things" and "I really don't want him with a marked up face on a case that's assault [by] strangulation." Defendant did not object to his counsel's explanation to the court, nor has he provided any evidence to support his version of events that he presents on appeal. He has failed to establish the factual predicate of his claim. *Carbin*, 463 Mich at 600.

Defendant also argues that his counsel failed to call witnesses. He claims that counsel should have called the "CSI Investigator" to testify that there were no signs that the victim's door had been tampered with and that they were unable to find any bullets or casings with a metal detector. Defendant has not provided an affidavit or offer of proof establishing what the "CSI Investigator" would have testified about. Rather, he merely refers to statements made in a police report that are attributable to the investigator. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600.[11]

---

[10] The court said, "[W]hen I look at the file, . . . one of the things I noticed is the other people who have taken out PPO's against your client in the past. And I recall in court, officers testifying that nothing can stop this gentleman from his activities."

[11] Further, the officer testified that he searched the area for bullets and casings and located none.

Defendant also claims that his counsel failed to call "Mr. Sahow," a neighbor who would have testified that he heard the sound of two people arguing and that it sounded like the arguing was outside. Again, defendant has not provided an affidavit or offer of proof establishing what "Mr. Sahow" would have testified about. Nonetheless, the same testimony was provided by another neighbor. The failure to call an additional witness to offer the same testimony did not deprive defendant of a substantial defense. *Chapo*, 283 Mich App at 371.

Lastly, defendant argues that his counsel was ineffective for failing to object to the admission of copies of messages sent from him to the victim. He asserts that he told his counsel that he had never seen the messages before.[12] On appeal, defendant claims that the messages could have been forged because the victim knew the password to his accounts. Although he provides citations to the record as purported support for his claim that he told his counsel that he had never seen the messages, the record does not support defendant's claim that raised a claim of message forgery. Again, defendant has failed to establish the factual predicate of his claim. Accordingly, he has failed to demonstrate that he was denied the effective assistance of counsel at trial.

## F. DISMISSAL OF AGGRAVATED STALKING

Defendant contends that the trial court improperly denied his counsel's request to dismiss the aggravated stalking charge because of the lack of evidence that the PPO was served. Specifically, defendant contends that he did not have actual notice of the PPO because personal service did not occur. Because personal service does not equate with actual notice, we disagree.[13]

"Aggravated stalking consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specified in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2003) (quotation marks and citation omitted). "Stalking means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d) (quotation marks omitted).

---

[12] The victim testified that all of the messages that were introduced at trial came from defendant's phone number.

[13] After a police officer was recalled for recross examination, the trial court inquired whether there were any changes to the jury instructions. The prosecutor indicated that there were no changes sought. The trial court then inquired if defense counsel wanted to address an argument regarding the PPO. Defense counsel submitted that defendant was told on the telephone by a police officer that a PPO *would* be filed. Because the officer used the future tense, defense counsel argued that "without any evidence that he was served, then the violation of the PPO goes away and the . . . aggravated stalking should be dismissed at this time."

As relevant to this case, MCL 750.411i(2) elevates stalking to aggravated stalking when a defendant stalks while violating a restraining order of which a defendant has received actual notice.[14] MCL 750.411i(2)(a). Thus, the prosecution was required to prove "actual notice" to convict defendant of aggravated stalking. Defendant contends that because personal service was not achieved, he could not be deemed to have notice and the aggravated stalking charge should have been dismissed.

However, in *Threatt*, the defendant alleged that because the evidence failed to show personal service of a copy of the PPO, actual notice for purposes of MCL 750.411i(2) was not satisfied. *Threatt*, 254 Mich App at 506. This Court rejected the assertion actual notice could be equated with service. Rather, it examined the defendant's actions and the testimony to conclude that defendant's statements indicated his knowledge of the PPO, his evasion of service, and he spoke to both the complainant and the investigator about the PPO. *Id*. at 506-507.

In the present case, the documentary evidence did not reflect that personal service was achieved on defendant. However, the proof of service indicated that a copy was left at defendant's residence and it was sent by registered mail. Thus, service of the PPO occurred in accordance with the court rules, MCR 3.706(D); MCR 2.105. The fact that it did not personally occur did not require dismissal of the aggravated stalking charge.[15] Accordingly, this claim of error does not entitle defendant to appellate relief.

## G. DENIAL OF DOCUMENTS AND TRANSCRIPTS

Defendant argues that trial counsel, appellate counsel, and the trial court failed to provide him with documents and transcripts that he needed to prepare his Standard 4 brief. In support of this assertion, he has attached to his brief photocopies of two e-mails that he sent to his trial counsel's assistant, an e-mail to another unidentified individual, and two Michigan Department of Corrections "Disbursement Authorizations" from himself to the Ingham County Circuit Court and to his appellate counsel. These documents are not a part of the lower court record and therefore constitute an impermissible attempt to expand the record on appeal. See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Nonetheless, defendant was assigned appellate counsel, and the trial court gave counsel a copy of the transcripts at public expense. The trial court adequately protected defendant's constitutional rights to trial transcripts at public expense. Once court transcripts have been provided to appellate counsel, the defendant

---

[14] The information alleged, in pertinent part, as follows: "and at least one of the actions constituting the offense is in violation of a restraining order the defendant has received actual notice of."

[15] Review of the aggravated stalking jury instruction, M Crim JI 17.25, reveals that aggravated stalking may be satisfied by violation of a court order, violation of a restraining order of which defendant had actual notice, or was a second or subsequent stalking offense. The note addressing history of the instruction reflects that the alterative theories to support aggravated stalking were added to reflect the *Threatt* Court's holding that "the defendant must have actual knowledge of the restraining order, although formal service is not required."

is not entitled to additional copies. See MCR 6.433(A). Defendant has not suggested that appellate counsel's request for transcripts was not fulfilled. Thus, under the court rules, defendant was not entitled to his own copy of the transcripts. Additionally, in the court record, there is no written request filed by defendant for documents that are in the court record. Absent such a request, the trial court had no duty to give copies of any documents to defendant. See MCR 6.433(A). Further, defendant has not provided any authority for the proposition that trial counsel or appellate counsel is required to provide defendant court records or trial transcripts on defendant's request. Defendant has not shown that he was improperly denied access to transcripts and court records.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto